Hon. Tana Lin

Jason M. Ayres, WSBA #39141
Tara J. Schleicher, WSBA #26884
**FOSTER GARVEY PC**
1111 Third Avenue, Suite 3000
Seattle, WA 98101
Telephone: (503) 228-3939
Jason.Ayres@foster.com
Tara.Schleicher@foster.com

Keith Ketterling (*pro hac vice*)
Lydia Anderson-Dana (*pro hac vice*)
Madeleine Holmes (*pro hac vice*)
Erin E. Roycroft (*pro hac vice*)
Anuj Shah (*pro hac vice*)
**STOLL STOLL BERNE LOKTING & SHLACHTER, P.C.**
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600
Facsimile: (503) 227-6840
kketterling@stollberne.com
landersondana@stollberne.com
mholmes@stollberne.com
eroycroft@stollberne.com
ashah@stollberne.com

*Counsel for Defendant Columbia Bank*

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LI TAN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COLUMBIA BANK, formerly known as UMPQUA BANK and successor by merger to COLUMBIA STATE BANK, an Oregon state-chartered commercial bank,<br><br>Defendant. | Case No. 2:26-cv-03831-TL<br><br>DEFENDANT'S MOTION TO DISMISS CLASS ACTION COMPLAINT<br><br>NOTE ON MOTION CALENDAR: December 14, 2026<br><br>ORAL ARGUMENT REQUESTED |

# TABLE OF CONTENTS

I. INTRODUCTION……………………………………………………………………...1

II. STATEMENT OF FACTS…………………………………………….………..1

A. The Alleged iCap Ponzi Scheme……………………………………………….1

B. Columbia's Banking Relationship with iCap ……………………………………….2

C. The iCap Bankruptcy and the iCap Trust Action……………………………….3

D. Plaintiff's Claims…………………………………………………………………....3

III. LEGAL STANDARDS………………………………………………………4

A. Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim………………………...4

B. Rule 9(b) Pleading Standard……………………………………………………….5

IV. ARGUMENT…………………………………………...………………....5

A. Plaintiff's Claims Are Barred by the Statute of Limitations……………………………5

B. Plaintiff's Aiding and Abetting Claims Are Inadequately Pleaded……………………..7

i. Plaintiff Fails to Allege with Particularity iCap's Primary Liability for Fraud…………………………………………………………………….…8

ii. Plaintiff Fails to Allege Columbia's Actual Knowledge of the Alleged Ponzi Scheme……………………………………………………………………10

iii. Plaintiff Fails to Allege Columbia's Substantial Assistance to the Alleged Ponzi Scheme……………………………………………………………………12

iv. Plaintiff Fails to Allege iCap's Primary Liability for Breach of Fiduciary Duty………………………………………………………………………....13

v. Plaintiff Fails to Allege Columbia's Actual Knowledge of Any Fiduciary Duty or Breach of that Duty..……………………………………………………...14

vi. Plaintiff Fails to Allege Columbia's Substantial Assistance to Any Breach of Fiduciary Duty……………………………………………………………...15

C. Plaintiff Fails to Allege a Conspiracy…………………………………………………16

D. Plaintiff Fails to Allege Violations of the Washington State Securities Act…………..17

E. Plaintiff's Claim for Negligent Performance of Voluntarily Undertaken Services Must Be Dismissed………………………………………………………………18

F. Plaintiff's Claim for Unjust Enrichment Must Be Dismissed……………………..……..20
V. CONCLUSION………………………………………………………………………..…..21

# TABLE OF AUTHORITIES

**Cases**

*1000 Virginia Ltd. P'ship v. Vertecs Corp.*,
158 Wash. 2d 566, 575–76 (2006) ........ 6

*Adams v. King Cnty.*,
164 Wash. 2d 640, 662 (2008) ........ 8

*Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*,
988 F.2d 1157, 1160 (Fed. Cir. 1993) ........ 4

*All Star Gas, Inc., of Washington v. Bechard*,
100 Wash. App. 732, 740 (2000) ........ 16, 17

*Allen v. State*,
118 Wash. 2d 753, 758 (1992) ........ 6

*Ashcroft v. Iqbal*,
556 U.S. 662, 678 (2009) ........ 4, 10

*Aventa Learning, Inc. v. K12, Inc.*,
830 F. Supp. 2d 1083, 1095–96 (W.D. Wash. 2011) ........ 6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 555 (2007) ........ 6

*Brashkis v. Hyperion Cap. Grp., LLC*,
No. 3:11-cv-05635 RBL, 2011 WL 6130787, at *3 (W.D. Wash. Dec. 8, 2011) ........ 8

*Brown v. MacPherson's, Inc.*,
86 Wash. 2d 293 (1975) ........ 19

*Burdick v. Rosenthal Collins Grp.*, LLC,
194 Wn. App. 1016, 2016 WL 3082652, at *5–6 (2016) ........ 18

*Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
637 F.3d 1047, 1055 (9th Cir. 2011) ........ 5, 14

*Casey v. U.S. Bank Nat. Assn.*,
127 Cal. App. 4th 1138, 1145 (2005) ........ 13

*Ciuffitelli for Tr. of Ciuffitelli Revocable Tr. v. Deloitte & Touche LLP*,
No. 3:16-CV-580-AC, 2017 WL 2927481, at *22 (D. Or. Apr. 10, 2017), ........ 9

*Concha v. London*,
62 F.3d 1493, 1502 (9th Cir. 1995) ........ 5

*Corbit v. J. I. Case Co.*,
70 Wash. 2d 522, 529 (1967) ........ 16, 17

*Cunningham v. Brown*,
265 U.S. 1 (1924) ........ 8, 9

*Eisenberg v. Wachovia Bank, N.A.*,
301 F.3d 220, 226 (4th Cir. 2002) ........ 19

*El Camino Res., LTD. v. Huntington Nat. Bank*,
722 F. Supp. 2d 875, 911 (W.D. Mich. 2010), *aff'd*, 712 F.3d 917 (6th Cir. 2013) ........ 13

*Falcon Props. LLC, V. Bowfits 1308 LLC*,
16 Wash. App. 2d 1, 10 n.3 (2020) ........ 20

*Farwest Steel Corp v. Mainline Metal Works, Inc.*,
48 Wash. App. 719, 732–33 (1987) ........ 21

*Folsom v. Burger King*,
135 Wash. 2d 658, 676 (1998) ........ 18

*Heinert v. Bank of Am. N.A.*,
835 F. App'x 627, 632 (2d Cir. 2020) ........ 17

*Hikma Pharm. USA Inc. v. Amarin Pharma, Inc.*,
608 U.S. 580, 589 (2026) ........ 10

*Hines v. Data Line Sys., Inc.*,
114 Wash. 2d 127, 136 (1990) ........ 17

*Hines v. Data Line Sys., Inc.*,
53 Wash. App. 283, 290 (1989) ........ 17

*Huang v. Hong Kong & Shanghai Banking Corp. LTD*,
No. 1:20-cv-03548-LTS-SN, 2022 WL 4123879, at *5 (S.D.N.Y. Sept. 9, 2022) ........ 13

*Hunichen v. Atonomi LLC*,
No. C19-0615-RAJ-SKV, 2023 WL 4214979, at *17 (W.D. Wash. Apr. 6, 2023) ........ 18

*In re Agape Litigation*,
681 F. Supp. 2d 352, 364 (E.D.N.Y. 2010) ........ 12, 13

*In re Agric. Research & Tech. Grp., Inc.*,
916 F.2d 528, 531 (9th Cir. 1990) ........ 8, 10, 12

*In re Consol. Meridian Funds*,
485 B.R. 604, 616 (Bankr. W.D. Wash. 2013) ........ 8, 12, 14, 15

*In re GlenFed, Inc. Sec. Litig.*,
42 F.3d 1541, 1548 (9th Cir. 1994) ........ 9

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988, 999 (9th Cir. 2018) .......... 7

*Lavington v. Hillier*,
22 Wash. App. 2d 134, 144 (2022) .......... 20

*Lewis Pacific Dairymen's Ass'n v. Turner*,
50 Wash.2d 762, 772 (1957) .......... 16

*Lorenz v. E. W. Bancorp, Inc.*,
No. 2:15-cv-06336-CAS(FFMx), 2016 WL 199392, at *8 (C.D. Cal. Jan. 14, 2016) .......... 11

*Lumentum Operations LLC v. nLIGHT, Inc.*,
No. C22-5186 BHS-DWC, 2023 WL 119436, at *5 (W.D. Wash. Jan. 6, 2023) .......... 6

*Malone v. Nuber*,
No. C07-2046RSL, 2009 WL 481288, at *2 (W.D. Wash. Feb. 23, 2009) .......... 6, 7

*Martin v. Abbott Labs.*,
102 Wash. 2d 581, 596 (1984) .......... 7, 8, 12

*Micro Enhancement Int'l, Inc. v. Coopers & Lybrand, LLP*,
110 Wash. App. 412, 433–34 (2002) .......... 13

*Miller v. U.S. Bank of Wash.*,
72 Wash. App. 416, 426 (1994) .......... 13

*Moon v. Phipps*,
67 Wash.2d 948, 954 (1966) .......... 14

*Moss v. U.S. Secret Serv.*,
572 F.3d 962, 969 (9th Cir. 2009) .......... 4

*Navarro v. Block*,
250 F.3d 729, 732 (9th Cir. 2001) .......... 4

*Neitzke v. Williams*,
490 U.S. 319, 327 (1989) .......... 4

*Norcon Builders, LLC v. GMP Homes VG, LLC*,
161 Wash. App. 474, 490 (2011) .......... 20

*Norton v. U.S. Bank Nat'l Ass'n*,
197 Wash. App. 1074 (2017) .......... 20

*Osborn v. Mason Cty.*,
157 Wash. 2d 18, 25 (2006) .......... 19

*Perkumpulan Inv. Crisis Ctr. Dressel-WBG v. Regal Fin. Bancorp, Inc.*,
781 F. Supp. 2d 1098, 1114 (W.D. Wash. 2011) .......... 14

*Sec. & Exch. Comm'n v. Fuhlendorf*,
No. C09-1292 MJP, 2010 WL 11500146, at *4 (W.D. Wash. Mar. 19, 2010) ........ 5

*Sherlock Invs.-Duvall LLC v. Intercoastal Auto Brokers & Logistics, LLC*,
No. 2:20-cv-00129-RAJ-BAT, 2020 WL 4729066, at *6 (W.D. Wash. Apr. 7, 2020) ........ 15

*Starr v. Baca*,
652 F.3d 1202, 1216 (9th Cir. 2011) ........ 4

*Stiley v. Block*,
130 Wash. 2d 486, 505 (1996) ........ 8

*Sumerix v. United States*,
No. 3:19-CV-05976-RBL, 2020 WL 1515639, at *3 (W.D. Wash. Mar. 30, 2020) ........ 19

*Swartz v. KPMG LLP*,
476 F.3d 756, 764 (9th Cir. 2007) ........ 5

*Ten Bridges, LLC v. Midas Mulligan, LLC*,
522 F. Supp. 3d 856, 865 (W.D. Wash. 2021) ........ 7

*Turner v. City & Cty. of San Francisco*,
788 F.3d 1206, 1210 (9th Cir. 2015) ........ 4

*Universal Life Church of Snohomish Cnty. v. GMAC Mortg. Corp.*,
No. C06-651RSM, 2007 WL 1185861, at *4 (W.D. Wash. Apr. 20, 2007) ........ 20

*Vernon v. Heckler*,
811 F.2d 1274, 1278 (9th Cir. 1987) ........ 5

*Vernon v. Qwest Commc'ns Int'l, Inc.*,
643 F. Supp. 2d 1256, 1264 (W.D. Wash. 2009) ........ 5

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097, 1103–05 (9th Cir. 2003) ........ 5, 8, 11, 14

*Wasco Prods., Inc. v. Southwall Techs., Inc.*,
435 F.3d 989, 991 (9th Cir. 2006) ........ 6, 16

*Westview Invs., Ltd. v. U.S. Bank*,
133 Wash. App. 835, 853 (2006) ........ 8

*Wilson v. State*,
84 Wash. App. 332, 350–51 (1996), *cert. denied*, 522 U.S. 949 (1997) ........ 16

*Woody v. Stapp*,
146 Wash. App. 16, 22 (2008) ........ 16

*Young v. Savidge*,
155 Wash. App. 806, 823 (2010) ........ 6

*Young v. Young*,
164 Wash. 2d 477, 484 (2008) .......... 20

*Yumul v. Smart Balance, Inc.*,
733 F. Supp. 2d 1117, 1131 (C.D. Cal. 2010) .......... 6

*Zabka v. Bank of Am. Corp.*,
131 Wash. App. 167, 171–72 (2005) .......... 19

**Statutes**

RCW 30A.22.120 .......... 15

RCW 30A.22.220 .......... 15

RCW 30A.20.090 .......... 15

RCW 21.20.430(4)(b) .......... 5

RCW 4.16.080(2) .......... 5

RCW 4.16.080(3) .......... 5

RCW 4.16.080(4) .......... 5

RCW 21.20.430(3) .......... 17

**Other Authorities**

*Commingling*, Black's Law Dictionary (12th ed. 2024) .......... 15

Restatement (Second) of Torts §§ 323, 324A .......... 19

Restatement (Third) of Torts §§ 42, 43 .......... 19

**Rules**

Federal Rules of Evidence 9(b) .......... 5, 9

## I. INTRODUCTION

Plaintiff Li Tan ("Plaintiff") brings this putative class action against Columbia Bank (as defined in the above caption) ("Columbia"), alleging that it aided and abetted a Ponzi scheme conceived by non-parties Chris and Jim Christensen and perpetrated through their entity iCap Enterprises, Inc. and its affiliates (collectively, "iCap"). Plaintiff alleges that Columbia conspired with iCap to defraud iCap's investors or, alternatively, that Columbia was negligent in failing to detect iCap's fraud. Plaintiff seeks damages from Columbia for her failed investment under a variety of claims ranging from securities fraud to unjust enrichment. But Plaintiff's Complaint fails as a matter of law because she does not—and cannot—state facts showing her entitlement to relief on any of those claims.

First, the Complaint was not filed within the applicable statute of limitations. Second, Plaintiff failed to allege sufficient facts that would establish Columbia's aiding and abetting fraud or fiduciary duty, because she failed to allege both the underlying torts and Columbia's actual knowledge and substantial assistance of those torts. Third, Plaintiff failed to sufficiently allege a civil conspiracy between Columbia and iCap. Fourth, Plaintiff has not stated a claim under the Washington State Securities Act ("WSSA"), because she has not—and cannot—allege that Columbia had the right to control iCap or materially participated in its sale of securities. Fifth, Plaintiff has not stated facts sufficient to support a claim for negligence under Washington's so-called "rescue doctrine," because she failed to allege both physical harm and reliance. Finally, Plaintiff has not stated a claim for unjust enrichment because she has not alleged that she conferred a benefit on Columbia, and because Columbia's retention of fees for banking services that it actually performed for iCap is not unjust.

For those reasons, Plaintiff's Complaint should be dismissed.

## II. STATEMENT OF FACTS

### A. The Alleged iCap Ponzi Scheme

Chris Christensen formed iCap as a real estate investment company.[1] *See* Class Action Complaint ("Compl."), ECF 1-4 ¶¶ 26, 28 (Oct. 8, 2026). From 2011 to 2023, "iCap raised

[1] The following facts are recounted from Plaintiff's Complaint and are restated herein without conceding their truth and without waiver of any right.

approximately $230 million from more than 1,800 investors in the United States and abroad." Compl. ¶¶ 28, 29.

Plaintiff invested a total of $1 million in two iCap funds. Compl. ¶¶ 43, 46. Plaintiff received offering materials stating that the primary purpose of each fund was to acquire real estate investments, and that investment proceeds would be used for the acquisition of investments, subject to certain operating expenses. Compl. ¶¶ 32, 44, 47. Plaintiff asserts that she relied on the offering materials in deciding to invest in iCap. Compl. ¶¶ 45, 48.

According to the Complaint, iCap was not a legitimate business but instead "operated as a Ponzi scheme." Compl. ¶ 34. The Christensens represented that "investor funds would be deployed in legitimate real-estate investments; that returns and repayments to investors would come from iCap investment performance and business operations; that investments would be secure; and that iCap would act honestly and transparently for investors' benefit." Compl. ¶ 30. However, the Christensens omitted that iCap "lacked sufficient operating returns to satisfy its obligations, used new investments and intercompany transfers to pay existing investors and creditors, commingled funds among nominally separate investment vehicles, and diverted investor funds to insiders and affiliated entities." Compl. ¶¶ 31, 35–40.

**B. Columbia's Banking Relationship with iCap**

iCap began a banking relationship with Columbia in 2013. *See* Compl. ¶ 56. Plaintiff alleges that Columbia gained extensive knowledge about iCap's business operations through the banking relationship and Columbia's standard customer due diligence processes. Compl. ¶¶ 66–67.

Plaintiff alleges that Columbia had actual knowledge of iCap's Ponzi scheme. Yet many of the circumstances to which Plaintiff points as evidence of "actual knowledge" are nothing more than routine banking services. For instance, Plaintiff alleges Columbia "had direct visibility into the source and use of iCap funds," based only on the unremarkable facts that Columbia is a bank and iCap was its customer. Compl. ¶ 69. Plaintiff also alleges that Columbia once declined to extend a home loan to Chris Christensen; one investigations worksheet opined that iCap's cash deposits appeared "out of pattern for an investment firm"; and Columbia conducted routine due-diligence reviews of iCap. Compl. ¶¶ 69–76. Plaintiff asserts that the "Bank saw" iCap's payments to investors, intercompany

transfers, overdrafts, negative balances, and "large transfers from iCap entities to Chris Christensen's personal accounts and related entities," though she does not identify who saw what or how any of that "visibility" created actual knowledge of the alleged Ponzi scheme. Compl. ¶¶ 71–72. Plaintiff alleges that Columbia reviewed iCap's tax returns from 2019, Compl. ¶ 73; investigated the source of a large cash deposit that was ultimately determined to be an investor's cash investment, Compl. ¶¶ 68, 74; and conducted periodic enhanced due diligence reviews of iCap, determining that its "risk level [was] 'HIGH,'" Compl. ¶ 75. Based on those facts, Plaintiff asserts that Columbia "knew—not merely should have known—that iCap accounts contained investor funds, *that iCap's legitimate operating returns could not support its promised obligations*, that nominally separate funds were being commingled to cover investor payments and shortfalls, and that substantial sums were being transferred to insiders without a legitimate investment purpose." Compl. ¶ 76 (emphasis added). Notably, Plaintiff does not allege that Columbia knew anything about iCap's operating returns or its promised obligations.

Plaintiff alleges that Columbia conspired with iCap to facilitate iCap's $230 million fraud in exchange for $2,000 to $4,000 per month in treasury management revenue. Compl. ¶¶ 57, 92–95.

### C. The iCap Bankruptcy and the iCap Trust Action

On September 29, 2023, iCap filed for Chapter 11 bankruptcy. Compl. ¶ 41. The Bankruptcy Court approved a liquidation plan, created the iCap Trust, and authorized the Trust to pursue the Trust's own claims and claims assigned to the Trust by investors. Compl. ¶¶ 42, 96. The iCap Trust filed a lawsuit on behalf of assigning investors against Columbia on September 26, 2025. Compl. ¶¶ 53, 96.

### D. Plaintiff's Claims

Despite having "transmitted her investment consideration into a fund maintained by Columbia in 2020, Compl. ¶¶ 43, 46, and despite serving as a "member of the [iCap Bankruptcy] Trust Board," Compl. ¶ 53, Plaintiff asserts that she did not learn the alleged facts supporting her claims against Columbia until at least 2025. Plaintiff asserts that in September 2025 she "became aware that the Trust had asserted claims against the Bank . . . however, [she] did not understand the specific factual basis" for the claims until June 10, 2026, when the court denied Columbia's motion to dismiss the iCap Trust's lawsuit, and she "clearly understood the specific facts and seriousness of the Bank's alleged misconduct." Compl. ¶¶ 53, 54.

On September 18, 2026, Plaintiff filed the present action. Plaintiff asserts six causes of action: (1) aiding and abetting fraud, (2) aiding and abetting breach of fiduciary duty, (3) violation of the Washington State Securities Act (RCW 21.20.010 and RCW 21.20.430), (4) civil conspiracy, (5) unjust enrichment, and (6) negligent performance of voluntary undertaking, the latter of which is pled in the alternative to the intentional torts. Compl. ¶¶ 111–60. Plaintiff purports to bring this case as a class action on behalf of investors "who retained the direct claims asserted in this action." Compl. ¶ 102.

## III. LEGAL STANDARDS

### A. Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is warranted under Rule 12(b)(6) when the complaint lacks a cognizable legal theory, or when it presents a cognizable legal theory yet fails to plead essential facts to support that theory. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). The purpose of a Rule 12(b)(6) motion is "to allow the court to eliminate actions that are fatally flawed in their legal premises and destined to fail, and thus to spare litigants the burdens of unnecessary pretrial and trial activity." *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1160 (Fed. Cir. 1993).

In assessing the adequacy of the complaint, the Court must accept all pleaded facts as true. *Turner v. City & Cty. of San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015). However, "to be entitled to a presumption of truth," the complaint "must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, "for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted).

"[T]he statute-of-limitations defense may be raised in a motion to dismiss when the running of the statute is apparent from the face of the complaint." *Vernon v. Heckler*, 811 F.2d 1274, 1278 (9th

Cir. 1987).

**B. Rule 9(b) Pleading Standard**

Fraud-based claims are further subject to a heightened pleading standard. Fed. R. Evid. 9(b). Rule 9(b) requires parties to allege the "who, what, when, where, and how of the misconduct charged." *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011). More specifically, "a plaintiff must identify 'the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Sec. & Exch. Comm'n v. Fuhlendorf*, No. C09-1292 MJP, 2010 WL 11500146, at *4 (W.D. Wash. Mar. 19, 2010) (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007)). Rule 9(b) "ensure[s] that defendants accused of the conduct specified have adequate notice of what they are alleged to have done, so that they may defend against the accusations" because "[w]ithout such specificity, defendants in these cases would be put to an unfair disadvantage, since at the early stages of the proceedings they could do no more than generally deny any wrongdoing." *Concha v. London*, 62 F.3d 1493, 1502 (9th Cir. 1995). Rule 9(b) extends not just to common law fraud claims but also to individual factual allegations of fraud, as well as claims "based on 'a unified course of fraudulent conduct,' even if the word 'fraud' is not used." *Vernon v. Qwest Commc'ns Int'l, Inc.*, 643 F. Supp. 2d 1256, 1264 (W.D. Wash. 2009) (citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–05 (9th Cir. 2003)).

## IV. ARGUMENT

**A. Plaintiff's Claims Are Barred by the Statute of Limitations**

Each of Plaintiff's claims is subject to a three-year statute of limitations.[2] *See* RCW 4.16.080(4) (fraud-based claims); RCW 4.16.080(2) (torts); RCW 21.20.430(4)(b) (securities fraud claims); RCW 4.16.080(3) (unwritten contracts, including unjust enrichment). Plaintiff alleges she invested in 2020 and the alleged Ponzi scheme ended in July 2023. Compl. ¶¶ 34, 37, 43, 46, 70 71. Yet, Plaintiff waited until September 14, 2026, to file suit. *See generally* Compl. Therefore, unless the statute of limitations is tolled by the discovery rule (or on some other basis), each of Plaintiff's claims expired in July 2026, if not earlier, and is time-barred.

---

[2] Although not stated in the Complaint, Columbia assumes for purposes of this Motion that Plaintiff is attempting to bring her claims under Washington law.

In Washington, "courts have applied a discovery rule of accrual, under which the cause of action accrues when the plaintiff discovers, or in the reasonable exercise of diligence should discover, the elements of the cause of action." *1000 Virginia Ltd. P'ship v. Vertecs Corp.*, 158 Wash. 2d 566, 575–76 (2006), *as corrected* (Nov. 15, 2006). "[T]he discovery rule will postpone the running of a statute of limitations only until the time when a plaintiff, through the exercise of due diligence, should have discovered the basis for the cause of action." *Allen v. State*, 118 Wash. 2d 753, 758 (1992); *see also Malone v. Nuber*, No. C07-2046RSL, 2009 WL 481288, at *2 (W.D. Wash. Feb. 23, 2009) ("Plaintiffs are not required to have notice of all of the relevant facts to trigger the statute of limitations."). "[T]he general rule is that when a plaintiff is placed on notice by some appreciable harm occasioned by another's wrongful conduct, the plaintiff must make further diligent inquiry to ascertain the scope of the actual harm." *Aventa Learning, Inc. v. K12, Inc.*, 830 F. Supp. 2d 1083, 1095–96 (W.D. Wash. 2011). "[A]n injured plaintiff who reasonably suspects that a specific wrongful act has occurred is on notice that legal action must be taken." *Id.* at 1096.

"The plaintiff bears the burden to establish that she did not discover the facts constituting the fraud and that she could not reasonably have discovered them within the statute of limitations period." *Young v. Savidge*, 155 Wash. App. 806, 823 (2010). This same principle applies in federal court. *See Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 991 (9th Cir. 2006) ("[F]ederal courts have repeatedly held that plaintiffs seeking to toll the statute of limitations on various grounds must have included the allegation in their pleadings[.]"); *Lumentum Operations LLC v. nLIGHT, Inc.*, No. C22-5186 BHS-DWC, 2023 WL 119436, at *5 (W.D. Wash. Jan. 6, 2023) ("[T]o invoke the discovery rule, 'the plaintiff must specifically plead facts which show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence.'"); *see also Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1131 (C.D. Cal. 2010) (collecting cases).

Here, Plaintiff makes conflicting allegations about when she discovered Columbia's alleged involvement and her inability to have discovered those facts earlier despite reasonable diligence. She first alleges that "[w]hen iCap failed to repay Tan and later entered bankruptcy, Tan knew that iCap had defaulted and that iCap and its principals had engaged in misconduct" but that she did not know that "Columbia had allegedly acquired actual knowledge of the scheme, repeatedly classified iCap as high

risk, observed the commingling and diversion of investor funds, or affirmatively assisted the transactions that prolonged the scheme." Compl. ¶ 51. But the discovery rule does not require that Plaintiff had "notice of all of the relevant facts." *See Malone*, 2009 WL 481288, at *2. Plaintiff then alleges the facts concerning Columbia's relationship with iCap were contained in "nonpublic Bank records" and that she had no access to those records while investing in 2020. Compl. ¶ 52. Plaintiff does not allege when she gained access to those bank records, including whether she learned anything after 2020, through her position on the Trust Board or otherwise, or detail her efforts to learn more. She also alleges on September 25, 2025, when the iCap Investment Trust filed an action against Columbia, "Tan first discovered facts suggesting Columbia's actionable involvement in iCap's securities violations," Compl. ¶ 136, and that she did not "clearly under[stand] the specific facts and seriousness of the Bank's alleged misconduct" until the Court in that Trust action issued its order on Columbia's motion to dismiss in June 2026, Compl. ¶¶ 53–54. But "clearly understanding" specific facts is not the standard, and Tan does not meet her burden of pleading why she could not have made earlier discovery or her reasonable diligence to discover those responsible for iCap's alleged Ponzi scheme. The Complaint does not properly invoke the discovery rule under Washington law.

Furthermore, public records appropriate for judicial notice at this motion to dismiss stage show that 1) Plaintiff was the named plaintiff in a state-court action against iCap and its principals filed on July 14, 2023; 2) Plaintiff subpoenaed related documents from Columbia on July 26, 2023; and 3) the Bank responded with documents in August 2023. *See* Declaration of Erin Roycroft, ¶¶ 3–5, Exs. 1–3; *Ten Bridges, LLC v. Midas Mulligan, LLC*, 522 F. Supp. 3d 856, 865 (W.D. Wash. 2021) ("[T]he 'court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment.'" (citing *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018))). Given those judicially noticeable documents, it is clear that Tan was on notice to make a "further diligent inquiry" as to her claims against Columbia in this matter more than three years before she filed this lawsuit. Each of Plaintiff's claims is time-barred and should be dismissed.

### B. Plaintiff's Aiding and Abetting Claims Are Inadequately Pleaded

Under Washington law, aiding and abetting liability falls within the rubric of "concerted action." *Martin v. Abbott Labs.*, 102 Wash. 2d 581, 596 (1984). It is not a tort but a theory of derivative liability,

under which the plaintiff must show 1) "the existence of a violation by the primary wrongdoer"; 2) the defendant's actual knowledge of the primary wrongdoer's tort; and 3) the defendant's substantial assistance to the primary wrongdoer in the commission of the tort. *In re Consol. Meridian Funds*, 485 B.R. 604, 616 (Bankr. W.D. Wash. 2013) ("*Meridian Funds*"); *see also Martin*, 102 Wash. 2d at 596 (noting that Washington has adopted the Restatement (Second) formulation for aiding and abetting liability); *Brashkis v. Hyperion Cap. Grp., LLC*, No. 3:11-cv-05635 RBL, 2011 WL 6130787, at *3 (W.D. Wash. Dec. 8, 2011). It requires "a tacit agreement among defendants to perform a tortious act." *Westview Invs., Ltd. v. U.S. Bank*, 133 Wash. App. 835, 853 (2006).

Plaintiff has not adequately alleged iCap's primary liability for fraud, Columbia's actual knowledge of the Ponzi scheme, or Columbia's substantial assistance to the scheme. Similarly, Plaintiff has not adequately alleged iCap's or the Christensens' primary liability for breach of fiduciary duty, Columbia's actual knowledge of the breach of duty, or Columbia's substantial assistance with the breach of duty.

**i. Plaintiff Fails to Allege with Particularity iCap's Primary Liability for Fraud**

As a necessary predicate to Columbia's liability for aiding and abetting iCap's fraud, Plaintiff must allege iCap's fraud. *See Brashkis*, 2011 WL 6130787, at *3. Additionally, Plaintiff must plead both iCap's fraud and Columbia's aiding and abetting with particularity under Rule 9(b). *See Vess*, 317 F.3d at 1103–04.

In Washington, a fraud claim has nine elements:

> "(1) representation of an existing fact; (2) materiality [of the fact]; (3) falsity [of the fact]; (4) the speaker's knowledge of its falsity; (5) intent of the speaker that it should be acted upon by the plaintiff; (6) plaintiff's ignorance of its falsity; (7) plaintiff's reliance on the truth of the representation; (8) plaintiff's right to rely upon it; and (9) damages suffered by the plaintiff."

*Adams v. King Cnty.*, 164 Wash. 2d 640, 662 (2008) (quoting *Stiley v. Block*, 130 Wash. 2d 486, 505 (1996)). In a Ponzi scheme, the fraud is primarily centered around the misrepresentations about the profitability and viability of the business venture. *See In re Agric. Research & Tech. Grp., Inc.*, 916 F.2d 528, 531 (9th Cir. 1990) (citing *Cunningham v. Brown*, 265 U.S. 1 (1924)). As courts have

explained, a Ponzi scheme involves making misrepresentations to investors that "a legitimate profit-making opportunity exists" while actually making payments to investors from the proceeds of a later investment rather than from the profits of the underlying business venture. *Id.*

Therefore, to plead that iCap was a Ponzi scheme per Rule 9(b), Plaintiff must plead specific facts about the misrepresentations to investors, how it was portrayed as a legitimate profit-making opportunity, and how no such opportunity existed. *See id.* Moreover, because iCap constituted various affiliates and funds, Plaintiff must allege for *each* fund the material representations that iCap made about a fund's profitability, the falsity of those representations, class members' reasonable reliance on those representations, and class members' resulting damages. *See Ciuffitelli for Tr. of Ciuffitelli Revocable Tr. v. Deloitte & Touche LLP*, No. 3:16-CV-580-AC, 2017 WL 2927481, at *22 (D. Or. Apr. 10, 2017), *report and recommendation adopted*, No. 3:16-CV-00580-AC, 2017 WL 2927150 (D. Or. July 5, 2017) ("Under Rule 9(b), a plaintiff alleging misrepresentations or omissions must allege when and where the misleading statement was made, 'what is misleading about [the] statement, and why it is false.'" (quoting *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994), *superseded by statute on other grounds by* 15 U.S.C. § 78u–4(b)(2))).

Here, Plaintiff fails to allege what representations iCap made to her for the specific Funds in which she invested. For Fund 4, Plaintiff claims that she received offering materials stating that the fund's primary purpose was to acquire real-estate investments and provide investors with a return. Compl. ¶ 44. Plaintiff asserts that the representation was false because iCap transferred approximately one-fifth of Fund 4 proceeds directly to investors, two-fifths of Fund 4 proceeds directly to other iCap entities, and a smaller portion directly to real estate projects. Compl. ¶ 33. However, transfer of funds from one iCap entity to another does not necessarily preclude further deployment of those same funds into iCap's real estate investments and projects (*i.e.*, the alleged purpose of Fund 4). Without explaining why transfers to other iCap entities precluded subsequent legitimate uses of the funds—or alleging where iCap transferred the remainder of Fund 4 proceeds—Plaintiff asks the Court to assume that iCap used most of Fund 4's proceeds improperly. Plaintiff makes even fewer allegations about the falsity of iCap's representations for iCap Investments, instead relying on general assertions about iCap's overall operations and profitability. *See* Compl. ¶¶ 34–42, 47. The sparse allegations for Fund 4 and iCap

Investments are simply not enough "to nudge [her] claim 'across the line from conceivable to plausible[.]'" *See Hikma Pharm. USA Inc. v. Amarin Pharma, Inc.*, 608 U.S. 580, 589 (2026) (quoting *Iqbal*, 556 U.S. at 678).

Plaintiff alleges virtually no other facts for any other iCap fund. As an initial matter, Plaintiff fails to identify the other funds at issue with specificity, referring instead to "Fund 1," "Fund 2," and "Fund 3." Compl. ¶¶ 62, 71. Even if Columbia could discern the meaning of those generic labels, Plaintiff says nothing of the specific misrepresentations that iCap made about those funds. For "Fund 1," Plaintiff makes a single assertion about the nature of the fund's deposits and withdrawals. Compl. ¶ 71. For "Fund 2" and "Fund 3," she cites one instance in which a bank employee facilitated the transfer of money from one fund to the other to prevent an insufficient funds condition in the bank account. Compl. ¶ 62. Those allegations are irrelevant to Plaintiff's theory of a Ponzi scheme, and they do not satisfy Rule 9(b)'s particularity standard.

In sum, the Court should dismiss Plaintiff's claim for aiding and abetting fraud solely based on her failure to plead iCap's underlying fraud.

**ii. Plaintiff Fails to Allege Columbia's Actual Knowledge of the Alleged Ponzi Scheme**

Plaintiff alleges that Columbia had actual knowledge of iCap's fraud through its "visibility" into iCap's accounts and its general knowledge of iCap through the bank's routine customer identification program and due diligence processes. *See* Compl. ¶¶ 120, 135. Those allegations do not plausibly suggest that Columbia knew iCap was a Ponzi scheme.

As explained above, a "Ponzi scheme" is a specific type of fraud in which the fraudster misrepresents the viability and profitability of the enterprise. *In re Agric. Research*, 916 F.2d at 531. Therefore, to plausibly allege that Columbia aided and abetted iCap's Ponzi scheme, Plaintiff must allege that Columbia had actual knowledge that iCap 1) was not a legitimate profit-making opportunity; 2) falsely represented to investors it was paying them from profits; and 3) misrepresented iCap's financial viability. *Id.*

Plaintiff does not allege anything with regard to Columbia's knowledge about iCap's Ponzi scheme. Instead, Plaintiff casts suspicion by discussing regular banking operations in ominous terms.

Plaintiff alleges that Columbia knew that iCap (1) received money from investors, Compl. ¶¶ 67–68; (2) transferred money among its various accounts, sometimes to cover an account with insufficient funds, *e.g.*, Compl. ¶¶ 69–71; (3) reported a net operating loss on its 2019 taxes, Compl. ¶ 73; (4) once made a large cash deposit, sourced from an investor, that an anti-money laundering analyst opined was "out of pattern for an investment firm," Compl. ¶¶ 68, 74; and (5) was subject to periodic enhanced due-diligence reviews because Columbia considered iCap to be "high risk," *id.* ¶ 75. Those averments do not come even close to plausibly alleging Columbia had actual knowledge that iCap represented to investors that it was solvent when in fact it was not a legitimate money-making enterprise.

First, to know that "iCap's legitimate operating returns could not support its promised obligations," Compl. ¶ 76, Columbia would have needed to know what iCap's "promised obligations" were. Plaintiff alleges no facts from which one could even infer that Columbia knew what iCap promised its investors. Plaintiff does not allege that Columbia viewed, or even had access to, private placement memoranda, promissory notes, debentures, or other investor-directed communications in which iCap allegedly promised how it would use investor funds and generate returns. *See, e.g.,* Compl. ¶¶ 44, 47 (allegations of iCap's promises to Plaintiff regarding her investment in Fund 4 and iCap Investments). The allegation falls far short of the particularity required under Rule 9(b). *See Vess*, 317 F.3d at 1103–04.

Second, there are no allegations Columbia knew that iCap was paying investors from other investors' proceeds. With the benefit of hindsight, Plaintiff appears to have calculated the percentage of iCap's deposits that she believes came directly from investors, intercompany transfers, and legitimate business operations. *E.g.*, Compl. ¶ 69 ("Approximately 95% of deposits into the investment-entity accounts came from investors, other iCap entities, and external lenders—not from business operations."). However, Plaintiff has not alleged that Columbia knew any of that information. Plaintiff simply assumes that, because Columbia "had direct visibility into the source and use of iCap funds," Columbia therefore knew what Plaintiff's post-bankruptcy audit of iCap's accounts allegedly shows. Compl. ¶ 69. That does not come close to alleging Columbia's actual knowledge of iCap's Ponzi scheme with the level of particularity required by Rule 9(b). *See e.g., Lorenz v. E. W. Bancorp, Inc.*, No. 2:15-cv-06336-CAS(FFMx), 2016 WL 199392, at *8 (C.D. Cal. Jan. 14, 2016) (holding that general

allegations that enhanced due diligence procedures "would have set off alarm bells" is insufficient standing alone to allege actual knowledge).

Third, Plaintiff fails to allege that iCap's tax returns in 2019 show a Ponzi scheme. Losses reported on a tax return do not indicate that a business is not a legitimate profit-making opportunity. They show that, for that tax year, the business's expenses exceeded its income. Without knowing the particulars of iCap's promises to its investors and whether it disclosed those losses, Columbia could not have known whether iCap's reported tax losses were incompatible with those promises.

And as for Columbia's due-diligence reviews, Plaintiff does not explain how its periodic review of iCap led Columbia to have actual knowledge of iCap's alleged Ponzi scheme. The due diligence and customer review practices that Plaintiff describes are common banking practices that do not amount to actual knowledge of a Ponzi scheme. As for the large cash deposit that was "out of pattern for an investment firm," Compl. ¶ 8, there is no obvious connection between that alleged concern for potential money laundering and iCap's alleged Ponzi scheme. Indeed, Plaintiff does not allege that cash deposits played a role in iCap's Ponzi scheme, and she does not otherwise explain why Columbia's suspicion of the source of a cash deposit, which appears to have been from an investor, *see* Compl. ¶ 68, would result in Columbia knowing that iCap was misleading its investors about its viability as a legitimate profit-making enterprise. *See In re Agric. Research*, 916 F.2d at 531.

In sum, Plaintiff filed a vague and lengthy complaint describing a series of common banking practices dressed up in ominous language. The Complaint fails to allege Columbia's actual knowledge of iCap's alleged Ponzi scheme.

### iii. Plaintiff Fails to Allege Columbia's Substantial Assistance to the Alleged Ponzi Scheme

Washington has adopted the Restatement (Second) of Torts approach to aiding and abetting liability. *Martin*, 102 Wash. 2d at 596. Under that approach, substantial assistance exists "where: (1) a defendant affirmatively assists, helps conceal, or by virtue of failing to act when required to do so enables the fraud to proceed; and (2) the actions of the aider/abettor proximately caused the harm on which the primary liability is predicated." *Meridian Funds*, 485 B.R. at 617 (quoting *In re Agape Litigation*, 681 F. Supp. 2d 352, 364 (E.D.N.Y. 2010)) (internal quotation marks omitted). "[A] bank's

performance of routine banking transactions does not constitute substantial assistance in another's tort." *Huang v. Hong Kong & Shanghai Banking Corp. LTD*, No. 1:20-cv-03548-LTS-SN, 2022 WL 4123879, at *5 (S.D.N.Y. Sept. 9, 2022) (citing *In re Agape Litig.*, 681 F. Supp. 2d at 365). "Ordinary business transactions that a bank performs for its customer can satisfy the substantial assistance element of an aiding-and-abetting claim only if the bank 'actually knew that those transactions were assisting the customer in committing a specific tort.'" *El Camino Res., LTD. v. Huntington Nat. Bank*, 722 F. Supp. 2d 875, 911 (W.D. Mich. 2010), *aff'd*, 712 F.3d 917 (6th Cir. 2013) (quoting *Casey v. U.S. Bank Nat. Assn.*, 127 Cal. App. 4th 1138, 1145 (2005)).

Each of the specific ways that Plaintiff alleges Columbia assisted iCap's Ponzi scheme do not rise to the level of substantial assistance because they are routine banking transactions. A bank does not substantially assist with a Ponzi scheme simply by retaining a banking relationship over another bank's proposal. *See* Compl. ¶¶ 77–79. Nor does it assist with a Ponzi scheme by continuing to monitor the customer's account activity through its standard compliance and due diligence processes. *See* Compl. ¶ 80. Plaintiff suggests that a Columbia employee lied about the number of overdrafts on iCap's accounts to allow iCap's access to remote deposit capture, *see* Compl. ¶ 81, but her other allegations indicate the employee's statement was accurate, *see* Compl. ¶¶ 61–62. And the acceptance of deposits into an account, the processing of transfers among a customer's accounts, and "transaction-specific assistance" are the epitome of routine banking. *See* Compl. ¶ 82. In the absence of plausibly alleging Columbia's actual knowledge of iCap's purported Ponzi scheme, none of those allegations of substantial assistance suffice as a matter of law.

#### iv. Plaintiff Fails to Allege iCap's Primary Liability for Breach of Fiduciary Duty

As discussed above, aiding and abetting liability is predicated on the primary wrongdoer's liability for the underlying tort. Breach of fiduciary duty requires "(1) existence of a duty owed, (2) breach of that duty, (3) resulting injury, and (4) that the claimed breach proximately caused the injury." *Micro Enhancement Int'l, Inc. v. Coopers & Lybrand, LLP*, 110 Wash. App. 412, 433–34 (2002) (citing *Miller v. U.S. Bank of Wash.*, 72 Wash. App. 416, 426 (1994)). Under Washington law, fiduciary relationships exist only if a) the type of relationship has traditionally been considered fiduciary or b)

"special circumstances exist in which one party justifiably relies on another to look after the former's financial interests." *Meridian Funds*, 485 B.R. at 618. Investment advisors typically owe a fiduciary duty only to the fund they manage—not the fund's investors. *Id.* at 619–20. Failure to allege a "direct relationship" in which the investment advisor dispenses advice to investors based on investor's individual financial circumstance is fatal to a complaint. *Id.* at 622. Moreover, placing trust and confidence in another is not enough. *Perkumpulan Inv. Crisis Ctr. Dressel-WBG v. Regal Fin. Bancorp, Inc.*, 781 F. Supp. 2d 1098, 1114 (W.D. Wash. 2011) (citing *Moon v. Phipps*, 67 Wash.2d 948, 954 (1966)).

The Complaint does not even attempt to establish the existence of a fiduciary relationship between the Christensens and iCap's investors. The only allegation in support appears to be a passing reference to the Christensens' exercise of "control and broad discretion" over iCap's operations and bank accounts. *See* Compl. ¶ 27. Otherwise, Plaintiff merely states the legal conclusion that the Christensens owed fiduciary duties to investors. Compl. ¶ 124. Nowhere does the Complaint detail an individual relationship in which the Christensens "advis[ed]" Plaintiff "as to how [she] should invest [her] funds based upon [her] individual financial circumstances." *Meridian Funds*, 485 B.R. at 620. Without explaining how the Christensens advised Plaintiff in any manner, Plaintiff cannot plausibly allege that the Christensens owed a fiduciary duty to her.

The Complaint also fails to allege the element of breach with particularity. Plaintiff summarily asserts that the Christensens breached their duty "by operating a Ponzi scheme, misusing and commingling investor funds, concealing iCap's condition, making false statements and omissions, and diverting investor funds to insiders and related entities for personal purposes." Compl. ¶ 125. Rule 9(b) applies to Plaintiff's claim for aiding and abetting a breach of fiduciary duty because it sounds in fraud. *See Vess*, 317 F.3d at 1103. And for the reasons stated above in Section IV.B.i, Plaintiff fails to allege "the who, what, when, where, and how" of the alleged iCap Ponzi scheme or other fraudulent conduct. *See Cafasso*, 637 F.3d at 1055. Without more, Plaintiff has failed to plead breach of fiduciary duty.

#### v. Plaintiff Fails to Allege Columbia's Actual Knowledge of Any Fiduciary Duty or Breach of that Duty.

As with the claim above, to sufficiently allege aiding and abetting breach of fiduciary duty,

Plaintiff must allege that Columbia actually knew "of the existence of a direct relationship between" the Christensens and the investors, and that it "reach[ed] a conscious decision to participate in [the] tortious activity." *See Meridian Funds*, 485 B.R. at 617, 622. Those allegations are absent here.

Plaintiff concludes that Columbia somehow learned about the Christensens' fiduciary duty and breach of duty through review of iCap's organizational documents, its purported knowledge that iCap's accounts contained investor funds, and its ability to review iCap's bank account activity. Compl. ¶ 126. As noted in Section IV.B.ii above, Plaintiff's vague reference to organizational documents does not cross the threshold set by Rule 9(b).

Once money is deposited into iCap's accounts, the money belongs to iCap. *See* RCW §§ 30A.20.090 (permitting banks to "disregard[] without liability" any adverse claims to a depositor's funds unless the adverse claimant procures a "restraining order, injunction, or other appropriate process"), 30A.22.220. Plaintiff's assertion that iCap's accounts contained "investor funds" fundamentally misunderstands banking laws. From Columbia's perspective, and as provided by statute, the money in iCap's accounts belonged to iCap and only to iCap. *See Sherlock Invs.-Duvall LLC v. Intercoastal Auto Brokers & Logistics, LLC*, No. 2:20-cv-00129-RAJ-BAT, 2020 WL 4729066, at *6 (W.D. Wash. Apr. 7, 2020) (applying RCW §§ 30A.20.090 and 30A.22.220 to bank).

Moreover, Plaintiff makes vague references to "commingling" but does not allege how Columbia could have known that iCap was "commingling" funds. Commingling is a fiduciary concept that arises when there is a breach of a duty to keep funds or assets separate. *See* Commingling, Black's Law Dictionary (12th ed. 2024). To know whether transfers among iCap's accounts were improper, Columbia would have to know whether iCap had a duty to segregate funds. Plaintiff has not alleged that Columbia had any such knowledge, and Columbia was not required to make such inquiry under Washington law. RCW §§ 30A.22.090, 30A.22.120.

**vi. Plaintiff Fails to Allege Columbia's Substantial Assistance to Any Breach of Fiduciary Duty**

Plaintiff's allegations as to Columbia's substantial assistance with iCap's breach of fiduciary duty are nearly identical to her allegations that Columbia substantially assisted iCap's fraud. *Compare* Compl. ¶ 121 (Columbia assisted the fraud by "processing shortfall-covering and insider transfers,

maintaining the accounts and treasury-management infrastructure that received and moved investor money, and continuing the relationship and transaction assistance after discovering the scheme") *with* Compl. ¶ 127 (Columbia assisted the breach of fiduciary duty by "facilitating transfers through which investor funds were commingled and diverted, covering fund shortfalls with money from other iCap entities, enabling transfers to insiders, maintaining the relationship, and continuing transaction-specific services"). For the same reasons that Plaintiff fails to allege Columbia's assistance with iCap's fraud, she fails to allege the bank's assistance with iCap's breach of fiduciary duty.

**C. Plaintiff Fails to Allege a Conspiracy**

Plaintiff's common law claim for civil conspiracy must be dismissed for similar reasons to her aiding and abetting claims. Civil conspiracy requires that "(1) two or more people combined to accomplish an unlawful purpose, or combined to accomplish a lawful purpose by unlawful means; and (2) the conspirators entered into an agreement to accomplish the object of the conspiracy." *Wilson v. State*, 84 Wash. App. 332, 350–51 (1996), *cert. denied*, 522 U.S. 949 (1997). And as with the aiding and abetting claims, because the object of Plaintiff's conspiracy theory is fraud, Rule 9(b) applies and the claim must be pled with particularity. *See Wasco*, 435 F.3d at 990.

Further, Plaintiff must prove her claims by clear, cogent, and convincing evidence. *Woody v. Stapp*, 146 Wash. App. 16, 22 (2008). And because "[m]ere suspicion or commonality of interests is insufficient to prove a conspiracy," *Wilson*, 84 Wash. App. at 351, courts have placed guardrails on the use of circumstantial evidence to show a conspiracy. "[When] the facts and circumstances relied upon to establish a conspiracy are as consistent with a lawful or honest purpose as with an unlawful undertaking, they are insufficient." *All Star Gas, Inc., of Washington v. Bechard*, 100 Wash. App. 732, 740 (2000) (quoting *Lewis Pacific Dairymen's Ass'n v. Turner*, 50 Wash.2d 762, 772 (1957)) (brackets in original); *see also Corbit v. J. I. Case Co.*, 70 Wash. 2d 522, 529 (1967) ("The test of the sufficiency of the evidence to prove a conspiracy is that the circumstances must be inconsistent with a lawful or honest purpose and reasonably consistent [o]nly with existence of the conspiracy.").

Plaintiff has not pleaded the elements of a civil conspiracy claim with sufficient particularity. As explained above, Plaintiff does not sufficiently plead Columbia's actual knowledge of iCap's alleged fraud, let alone an agreement to participate in it. *See Heinert v. Bank of Am. N.A.*, 835 F. App'x 627,

632 (2d Cir. 2020) (summary order) ("because the claim for conspiracy requires the same allegations of actual knowledge as those discussed, and found wanting [with respect to the claim for aiding and abetting a Ponzi scheme], the claim for conspiracy also falls"). Plaintiff asserts that the conspiratorial agreement is "tacit" and can be shown through circumstantial evidence, but the circumstances described are ordinary banking transactions—such as Columbia employees' "assistance with daily transactions" and "repeated assistance" with transferring funds between iCap and Christensen's various accounts. Compl. ¶¶ 149–51. Those circumstances are at least as consistent with a lawful purpose as they are with Plaintiff's conspiracy theory. Therefore, the circumstances alleged are insufficient as a matter of law to establish a civil conspiracy. *Corbit*, 70 Wash. 2d at 529; *All Star Gas*, 100 Wash. App. at 740.

Moreover, Plaintiff has not alleged facts that would support the second element of a conspiracy claim: that Columbia entered into an agreement with iCap to accomplish an unlawful purpose, or a lawful purpose by unlawful means. There are no allegations that Columbia intended to defraud Plaintiff, and Plaintiff concedes as much in her complaint. *See* Compl. ¶ 150. And the means by which the alleged conspiracy was accomplished, as identified by Plaintiff, were lawful banking activities. *See* Compl. ¶ 149. Plaintiff has not identified anything unlawful about overdrafts and transfers among accounts. *Id.*

For those reasons, Plaintiff's civil conspiracy claim must be dismissed.

### D. Plaintiff Fails to Allege Violations of the Washington State Securities Act

Plaintiff alleges Columbia's WSSA liability under two theories: that Columbia (1) controlled iCap and (2) materially aided its sale of securities under RCW 21.20.430(3). Plaintiff does not sufficiently allege either theory to support a WSSA claim.

"Control" under the WSSA means "the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." *Hines v. Data Line Sys., Inc.*, 114 Wash. 2d 127, 136 (1990). "The following factors should be considered when determining whether one is a controlling person: day-to-day involvement in business operations, previous experience in that particular business, and preparation of the corporation's business documents." *Hines v. Data Line Sys., Inc.*, 53 Wash. App. 283, 290 (1989), *rev'd in part on*

*other grounds*, 114 Wash. 2d 127 (1990). Here, Plaintiff has not alleged that Columbia had the power to control iCap, participated in its day-to-day business operations, had any previous experience in iCap's real estate business, or prepared any of iCap's corporate documents. Plaintiff argues that Columbia employees "exercised direct and indirect control over" iCap's sale of securities through facilitating iCap's banking transactions. Compl. ¶ 133. If that were sufficient to allege a claim for securities violation, every financial institution operating in Washington would be liable as a control person for their depositors' security offerings. That is not the law in Washington.

With respect to material aid in the sale of securities, "[w]hile there is little case law addressing this standard, courts have required that the material aid be given 'in the course of the sales transaction.'" *Hunichen v. Atonomi LLC*, No. C19-0615-RAJ-SKV, 2023 WL 4214979, at *17 (W.D. Wash. Apr. 6, 2023), *report and recommendation adopted*, No. 19-0615-RAJ-SKV, 2023 WL 4201693 (W.D. Wash. June 27, 2023) (quoting *Burdick v. Rosenthal Collins Grp.*, LLC, 194 Wn. App. 1016, 2016 WL 3082652, at *5–6 (2016)). Plaintiff has not alleged that Columbia aided in the sale of iCap's securities to her. Plaintiff alleges that Columbia "suppl[ied] the transaction infrastructure without which iCap could not continue its offerings." Compl. ¶ 134. The same could be said of any number of third-party companies that iCap used, including its internet service provider, email system, or for that matter, the vendor that sold the paper the notes were printed on.

Plaintiff's allegations fall short of alleging either control-person or material participation liability under the WSSA and should be dismissed.

**E. Plaintiff's Claim for Negligent Performance of Voluntarily Undertaken Services Must Be Dismissed**

As with the other claims, Plaintiff has not sufficiently stated a claim for "negligent performance of voluntarily undertaken services" for numerous reasons.

First, it is not clear that Washington law recognizes a claim for "negligent performance of voluntarily undertaken services." Washington does recognize a claim for "voluntary rescue," *see Folsom v. Burger King*, 135 Wash. 2d 658, 676 (1998), but that claim does not apply in the circumstances alleged here. No Washington court has allowed a voluntary rescue claim when the plaintiff was not in danger of physical harm to their person or property. *See id.* (plaintiffs were

murdered by robbers); *Brown v. MacPherson's, Inc.*, 86 Wash. 2d 293 (1975) (defendant had a duty to warn plaintiffs about risk of avalanche). Likewise, the Restatements recognize the risk of physical harm as a necessary element of a claim for negligent performance of a voluntary undertaking. *See* Restatement (Second) of Torts §§ 323, 324A; Restatement (Third), Torts: Liability for Physical and Emotional Harm §§ 42, 43 (defendant "who undertakes to render services to another and who knows or should know that the services will reduce the risk of *physical harm* . . . has a duty of reasonable care" under certain circumstances (emphasis added)). Physical harm is not alleged here.

Second, Plaintiff's voluntary-rescue claim should be dismissed because Plaintiff has not alleged reliance. "The Washington Supreme Court has held that reliance is the 'linchpin' of this so-called 'rescue doctrine.'" *Sumerix v. United States*, No. 3:19-CV-05976-RBL, 2020 WL 1515639, at *3 (W.D. Wash. Mar. 30, 2020) (quoting *Osborn v. Mason Cty.*, 157 Wash. 2d 18, 25 (2006) (en banc)). "No duty can exist under the rescue doctrine without this privity of reliance." *Id.* (quoting *Osborn*, 157 Wash. 2d at 25 (internal quotation marks omitted)). Plaintiff has not only failed to allege any facts about her reliance on Columbia's alleged voluntarily undertaking—she expressly disclaims any knowledge about Columbia's involvement, foreclosing even the possibility of reliance. *See* Compl. ¶ 136.

Washington courts have been clear that banks do not owe duties to third parties in negligence, "absent a direct relationship or statutory duty," *Zabka v. Bank of Am. Corp.*, 131 Wash. App. 167, 171–72 (2005), *as amended* (Jan. 19, 2006), for at least two reasons. First, a contrary rule "would expose banks to unlimited liability [to non-customers] for unforeseeable frauds." *Id.* at 172 (quoting *Eisenberg v. Wachovia Bank, N.A.*, 301 F.3d 220, 226 (4th Cir. 2002)). Second, Washington has recognized that banks are "not in the best position to protect [investors]" from the fraudulent conduct of the bank's deposit customers—the investors themselves are. *Id.* at 173.

Both rationales apply here. Because this claim is pled in the alternative, it is only actionable if Plaintiff fails to show that Columbia had actual knowledge of iCap's alleged fraud. But if Columbia did not have such knowledge, Columbia would not be able to protect third parties from iCap's conduct. *See id*. A contrary result would be against the weight of authority holding that banks have no duty to third

parties under these circumstances.[3] *See, e.g., Norton v. U.S. Bank Nat'l Ass'n*, 197 Wash. App. 1074 (2017) (unpublished) (applying *Zabka* to hold bank owed no duty to investors of bank's deposit customer); *Universal Life Church of Snohomish Cnty. v. GMAC Mortg. Corp.*, No. C06-651RSM, 2007 WL 1185861, at *4 (W.D. Wash. Apr. 20, 2007) (relying on *Zabka* to hold lender owed no duty of care to third party).

Plaintiff's voluntary-rescue claim should be dismissed.

### F. Plaintiff's Claim for Unjust Enrichment Must Be Dismissed

Finally, Plaintiff has not alleged facts sufficient to state a claim for unjust enrichment.

"Unjust enrichment is the method of recovery for the value of the benefit retained absent any contractual relationship because notions of fairness and justice require it." *Young v. Young*, 164 Wash. 2d 477, 484 (2008). A plaintiff must plead and prove three elements: "(1) the defendant receives a benefit, (2) the received benefit is at the plaintiff's expense, and (3) the circumstances make it unjust for the defendant to retain the benefit without payment." *Id.* at 484–85. With respect to the first element, the benefit must be conferred on the defendant by the plaintiff. *Lavington v. Hillier*, 22 Wash. App. 2d 134, 144 (2022) ("*Young* and multiple Court of Appeals cases state that *a plaintiff must confer a benefit on the defendant* to satisfy the first element of unjust enrichment." (emphasis in original)). And with respect to the third element, "[i]t is critical that the enrichment be unjust both under the circumstances and as between the two parties to the transaction." *Norcon Builders, LLC v. GMP Homes VG, LLC*, 161 Wash. App. 474, 490 (2011).

Plaintiff's claim for unjust enrichment fails on several fronts. First, Plaintiff does not allege that *she* conferred any benefit on Columbia. The only benefit identified in the Complaint is the $2,000 to $4,000 in monthly treasury-management fees.[4] Neither Plaintiff nor any other investor paid those fees—it was iCap that conferred that benefit on Columbia. *See Falcon Props. LLC, V. Bowfits 1308 LLC*, 16 Wash. App. 2d 1, 10 n.3 (2020) (buyer could not establish unjust enrichment claim against

---

[3] Other states are in accord. *See, e.g., Chazen v. Centennial Bank*, 61 Cal. App. 4th 532, 543 (1998) (banks do not owe duty of care to third parties).

[4] Plaintiff does not allege how Columbia benefited from the "use" of iCap's deposits. Plaintiff alleges that that Columbia's "use" of iCap's deposit balances was a benefit conferred on Columbia by her and other investors, Compl. ¶ 157, but that is a legal conclusion.

broker in sale of building, where seller paid commission to broker, despite fraudulent misrepresentations by seller company and broker's principal role in seller company). Nor does she allege that those fees are or could be traceable to Plaintiff's or other investors investment funds. And, Plaintiff alleges elsewhere that iCap's accounts also contained deposits from outside lenders and intercompany transfers. Compl. ¶ 7. In other words, Plaintiff alleges that iCap—not Plaintiff—initiated the transactions that generated fees, and those fees were generated from deposits that had nothing to do with Plaintiff's investment. Second, to the extent a benefit was conferred on Columbia, the Complaint also fails to establish how Columbia's retention of the benefit was unjust under the circumstances.

Washington law does not recognize a claim for unjust enrichment under these facts. *See Farwest Steel Corp v. Mainline Metal Works, Inc.*, 48 Wash. App. 719, 732–33 (1987) (defendant not unjustly enriched where it did not "acquiesce in or encourage the contract," mislead the plaintiff, or display "some clear act of bad faith"). Plaintiff's claim for unjust enrichment should be dismissed.

## V. CONCLUSION

For the reasons above, Columbia requests that the Court dismiss Plaintiff's Complaint with prejudice.

**LCR 7(e)(6) CERTIFICATION**

I certify that this memorandum contains 8,196 words, in compliance with the Local Civil Rules.

Dated: November 16, 2026

Respectfully Submitted,

STOLL STOLL BERNE LOKTING & SHLACHTER, P.C.

By: <u>*s/ Erin E. Roycroft*</u>
Keith Ketterling (*pro hac vice)*
kketterling@stollberne.com
Lydia Anderson-Dana (*pro hac vice*)
landersondana@stollberne.com
Madeleine Holmes (*pro hac vice*)
mholmes@stollberne.com
Erin E. Roycroft (*pro hac vice*)
eroycroft@stollberne.com
Anuj Shah (*pro hac vice*)
ashah@stollberne.com

209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: (503) 227-1600
Facsimile: (503) 227-6840

FOSTER GARVEY PC

By: *s/ Jason M. Ayres*
Jason M. Ayres, WSBA #39141
Jason.Ayres@foster.com
Tara J. Schleicher, WSBA #26884
Tara.Schleicher@foster.com

1111 Third Avenue, Suite 3000
Seattle, WA 98101
Telephone: (503) 228-3939

Attorneys for Defendant Columbia Bank