# EXHIBIT 1

FILED
2023 JUL 14 04:15 PM
KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE #: 23-2-12786-2 SEA

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR KING COUNTY

| | |
|---|---|
| LI TAN; TING SHAO; FAN ZHANG; HAIYAN LI; YUANYUAN LI;SHIYU ZHANG; YI SHAN; and JIA LU,<br><br>Plaintiffs,<br><br>v.<br><br>CHRIS CHRISTENSEN and DEBRA CHRISTENSEN, and the marital community comprised thereof; JIM CHRISTENSEN and SAMANTHA CHRISTENSEN and the marital community comprised thereof; ICAP ENTERPRISES, INC., ICAP EQUITY, LLC; INVALUS, LLC; ICAP VAULT 1, LLC; ICAP PACIFIC INCOME FUND 4 LLC; SENZA KENMORE, LLC; ICAP MANAGEMENT LLC; ICAP VAULT, LLC; ICAP VAULT MANAGEMENT, LLC; VAULT HOLDING, LLC; ICAP PACIFIC NW MANAGEMENT, LLC; ICAP REALTY LLC; ICAP HOLDING LLC; ICAP HOLDING 5, LLC; ICAP HOLDING 6, LLC; ICAP BROADWAY, LLC, ICAP CAMPBELL WAY, LLC, 725 BROADWAY, LLC; COLPITTS SUNSET, LLC; VH 1121 14TH, LLC; VH 2ND STREET OFFICE, LLC, VH SENIOR CARE, LLC; VH PIONEER VILLAGE, LLC; VH WILLOWS TOWNHOMES, LLC; HPW HOME, LLC; UW 17TH AVE, LLC; LAURELCREST, LLC, INVALUS HOLDINGS, LLC; INVALUS RED, LLC, and JOHN DOES 1-10,<br><br>Defendants. | No.<br><br>COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF |



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Plaintiffs Li Tan, Ting Shao, Fan Zhang, Haiyan Li, Yuanyuan Li, Shiyu Zhang, Yi Shan, and Jia Lu ("Plaintiffs"), by and through their attorney of record, John T. Bender of Corr Cronin LLP, for their Complaint against Chris Christensen, Jim Christensen, iCap Enterprises, Inc., iCap Equity LLC, Invalus, LLC, iCap Vault 1, iCap Pacific Income Fund 4, LLC, Senza Kenmore LLC, iCap Management LLC, iCap Vault, LLC, iCap Vault Management, LLC, Vault Holding, LLC, iCap Pacific NW Management, LLC, iCap Realty, LLC, iCap Holding, LLC, iCap Holding 5, LLC, iCap Holding 6, LLC, iCap Broadway, LLC, iCap Campbell Way, LLC, 725 Broadway, LLC, Colpitts Sunset, LLC, VH 1121 14th, LLC, VH 2nd Street Office, LLC, VH Senior Care, LLC, VH Pioneer Village, LLC, VH Willows Townhomes, LLC, HPW Home, LLC, UW 17th Ave, LLC, Laurelcrest, LLC, Invalus Holdings, LLC, Invalus Red, LLC, and John Does 1-10 ("Defendants" or, for convenience, "iCap"), allege as follows:

## NATURE OF ACTION

1. This suit arises out of Defendants' fraud, civil conspiracy, violation of the Securities Act of Washington, violation of Washington's Consumer Protection Act, and, alternatively, breach of contract.

2. Through a variety of schemes, devices, and artifices, Defendants, under the control and direction of Defendants Chris Christensen and Jim Christensen, carried out a deceptive, abusive, and calculated multi-year campaign to mislead unsuspecting Chinese investors and misappropriate millions of dollars of investor funds. Defendants induced Plaintiffs to invest their savings in private offerings of debt and equity securities based upon false or misleading assurances about the security, profitability, and liquidity of the investments—as well as Defendants' purported expertise, diligence, responsibility, and track record of success.

3. Tragically for Plaintiffs and other investors, few if any of these assurances turned out to be true—and it was only a matter of time before iCap's house of cards fell apart completely. Beginning in January 2023, Defendants began failing to fulfill Plaintiffs' repayment requests.



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

At the same time, Defendants continued inducing unsuspecting investors to invest their savings. In March, Defendants circulated a formal announcement to investors stating that they could no longer meet their obligations in the timeframe promised, essentially confirming Plaintiffs' worst fears.

4. Over the past several weeks, Plaintiffs have carried out a comprehensive investigation into iCap and the Christensens' business activities, costing tens of thousands of dollars of their own funds—and the full truth appears far more sinister than what Defendants' had previously disclosed. As it turns out, many of the projects in the real estate portfolio touted by the Christensens and iCap to induce Plaintiffs' to invest have yet to even break ground—and some do not appear to even be owned by Defendants. Plaintiffs' investigation has also revealed self-dealing by Chris Christensen, and potentially others, apparently designed to benefit himself and his marital community and hide assets from creditors. Upon information and belief, Defendants Chris Christensen and his brother, Jim Christensen, have diverted Plaintiffs' funds to benefit themselves as well as other ventures without Plaintiffs' knowledge or consent.

5. Plaintiffs have been severely damaged by virtue of Defendants' conduct—and their injury is continuing. In one fell swoop, Defendants have robbed Plaintiffs of their money and financial security.

6. While Plaintiffs' investigation has been progressing, Defendants have continued to shirk Plaintiffs' repayment requests. Spurring Plaintiffs to bring this action, Defendants' activities over the past few weeks, in particular, bear all the hallmarks of an after-the-fact attempt to cover their tracks. iCap has slowly taken portions of its website offline and apparently reduced its management team to a skeleton crew of a just few individuals. Defendants have ignored Plaintiffs' requests for additional information. And Defendants have ignored Plaintiffs' requests for the return of their funds, necessitating this lawsuit and the urgent attention of this Court.



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

7. Plaintiffs now bring this action to hold Defendants' accountable, to recover their principal investments and other monetary damages to which they are entitled, and to seek all available equitable and or injunctive relief.

## PARTIES

8. Plaintiff Li Tan resides in King County, Washington, and brings claims on behalf of herself and those assigned to her by Yuan Tian.

9. Plaintiff Ting Shao resides in King County, Washington, and brings claims on behalf of herself.

10. Plaintiff Fan Zhang resides in China, and brings claims on behalf of herself.

11. Plaintiff Haiyan Li resides in King County, Washington and brings claims on behalf of herself and those assigned to her by Jihong Lin.

12. Plaintiff Yuanyuan Li resides in King County, Washington, and brings claims on behalf of herself.

13. Plaintiff Shiyu Zhang resides in China, and brings claims on behalf of herself.

14. Plaintiff Yi Shan resides in China, and brings claims on behalf of herself.

15. Plaintiff Jia Lu resides in China, and brings claims on behalf of himself and those assigned to him by Yulan Ren.

16. Chris Christensen resides in King County, Washington. He is a principal, owner and/or control person, be it actual or de facto, of various entity-Defendants named in this action, including, but not limited to, Defendant iCap Enterprises, LLC, iCap Equity LLC and Defendant iCap Vault 1, LLC, for which he is one of two primary officers. Chris Christensen wholly owns iCap Enterprises, Inc., which is the sole member of Defendant iCap Equity LLC. Chris Christensen is married to Debra Christensen and, at all times relevance herein, he acted for the benefit of his marital community. Debra Christensen resides in King County, Washington, with her spouse, Chris Christensen.



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

17. Jim Christensen resides in King County, Washington. He is a principal, owner and/or control person, be it actual or de facto, of various entity-Defendants named in this action, including without limitation Invalus LLC, certain iCap entities, and affiliates and subsidiaries. Jim Christensen is married to Samantha Christensen and, at all times relevant herein, acted for the benefit of his marital community. Samantha Christensen resides in King County, Washington, with her spouse, Jim Christensen.

18. iCap Enterprises, Inc., is a Washington corporation with a principal place of business in King County, Washington.

19. iCap Equity, LLC, is a Delaware limited liability company with a principal place of business in King County, Washington.

20. Invalus, LLC, is a Washington limited liability company with a principal place of business in King County, Washington.

21. iCap Vault 1, LLC, is a Delaware limited liability company with a principal place of business in King County, Washington.

22. iCap Pacific Income Fund 4, LLC, is a Washington limited liability company with a principal place of business in King County, Washington.

23. Senza Kenmore, LLC, is a Washington limited liability company with a principal place of business in King County, Washington.

24. iCap Management LLC, is a Washington limited liability company with a principal place of business in King County, Washington.

25. iCap Vault, LLC, is a Delaware limited liability company with a principal place of business in King County, Washington.

26. iCap Vault Management, LLC, is a Delaware limited liability company with a principal place of business in King County, Washington.



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

27. Vault Holding, LLC, is a Delaware limited liability company with a principal place of business in King County, Washington.

28. iCap Pacific NW Management, LLC, is a Washington limited liability company with a principal place of business in King County, Washington.

29. iCap Realty, LLC, is a Washington limited liability company with a principal place of business in King County, Washington, and upon information and belief may be in possession and control of recoverable assets.

30. iCap Holding 5, LLC, is a Washington limited liability company with a principal place of business in King County, Washington, and upon information and belief may be in possession and control of recoverable assets.

31. iCap Holding 6, LLC, is a Washington limited liability company with a principal place of business in King County, Washington, and upon information and belief may be in possession and control of recoverable assets.

32. iCap Broadway, LLC, is a Washington limited liability company with a principal place of business in King County, Washington, and upon information and belief may be in possession and control of recoverable assets.

33. iCap Campbell Way, LLC, is a Washington limited liability company with a principal place of business in King County, Washington, and upon information and belief may be in possession and control of recoverable assets.

34. 725 Broadway, LLC, is a Washington limited liability company with a principal place of business in King County, Washington, and upon information and belief may be in possession and control of recoverable assets.

35. Colpitts Sunset, LLC, is a Washington limited liability company with a principal place of business in King County, Washington, and upon information and belief may be in possession and control of recoverable assets.



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

36. VH 1121 14th, LLC, is a Delaware limited liability company with a principal place of business in King County, Washington, and upon information and belief may be in possession and control of recoverable assets.

37. VH 2nd Street Office, LLC, is a Delaware limited liability company with a principal place of business in King County, Washington, and upon information and belief may be in possession and control of recoverable assets.

38. VH Senior Care LLC, is a Washington limited liability company with a principal place of business in King County, Washington, and upon information and belief may be in possession and control of recoverable assets.

39. VH Pioneer Village, LLC, is a Delaware limited liability company with a principal place of business in King County, Washington, and upon information and belief may be in possession and control of recoverable assets.

40. VH Willows Townhomes, is a Delaware limited liability company with a principal place of business in King County, Washington, and upon information and belief may be in possession and control of recoverable assets.

41. HPW Home, LLC, is a Washington limited liability company with a principal place of business in King County, Washington, and upon information and belief may be in possession and control of recoverable assets.

42. UW 17th Ave, LLC, is a Washington limited liability company with a principal place of business in King County, Washington, and upon information and belief may be in possession and control of recoverable assets.

43. Laurelcrest, LLC, is a Washington limited liability company with a principal place of business in King County, Washington, and upon information and belief may be in possession and control of recoverable assets.



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

44. Invalus Holdings, LLC, is a Washington limited liability company with a principal place of business in King County, Washington, and upon information and belief may be in possession and control of recoverable assets.

45. Invalus Red, LLC, is a Washington limited liability company with a principal place of business in King County, Washington, and upon information and belief may be in possession and control of recoverable assets.

46. John or Jane Does 1-10 are entities or persons involved in the matters described herein. Plaintiffs reserve the right to add them as Defendants in this action upon discovery of their identities or facts supporting claims against them.

## JURISDICTION AND VENUE

47. This Court has subject matter jurisdiction pursuant to RCW 2.08.010.

48. Venue and jurisdiction over defendants are appropriate in this Court pursuant to RCW 4.12.025 and RCW 4.12.010.

## FACTUAL ALLEGATIONS

### A. Defendants induced Plaintiffs to invest based upon assurances about the security of their investments and Defendants' diligence and track record of success.

49. Over the past several years, Defendants have actively induced hundreds of unsuspecting investors to invest in private debt and equity securities—purportedly to finance the development of lucrative residential and mixed-use real estate projects throughout the Pacific Northwest.

50. iCap specifically targeted Chinese immigrants who relocated to Washington and Chinese nationals with their marketing efforts. iCap's fundraising efforts were very successful: iCap raised well over $150 million dollars from investors in just a few years.

51. Defendants employed a variety of devices and schemes to solicit and induce Plaintiffs and other investors to invest their capital.



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

52. Among them, Defendants formed and touted various capital funds, two of which were iCap Pacific Fund 4, LLC, iCap Vault 1, LLC, each of which designed to raise capital by issuing *secured promissory notes* in tandem with *pledge and security agreements* and, in some cases, *guaranty agreements* executed by various subsidiaries and affiliates. The promissory notes for iCap Pacific Income Fund 4, LLC and iCap Vault 1, LLC purported to give Plaintiffs and other investors the right to repayment of their outstanding principal and all accrued interest upon demand prior to maturity.

53. Defendants induced Plaintiffs to invest in these funds by, among other things, touting daily-compounded interest rates and representing that they were subject to strict periodic- and demand-repayment terms—and that the capital they contributed would be secured by a "valid and perfected" security interest in the companies which owned and controlled the real-estate projects.[1]

54. In connection with such offerings, Defendants issued "Confidential Private Placement Memoranda" ("PPM"), and other marketing materials, purporting to summarize the offering and its material terms and conditions. These materials assured Plaintiffs and other unsuspecting investors, among other things, that every promissory note issued by the fund would be secured by membership interests of the Company's subsidiary entities, which held the underlying real estate and that the offering proceeds would be allocated toward investing and developing such real estate.

---

[1] Indeed, iCap not only touted that Plaintiffs' investment funds and earnings would be secured by a valid and perfected security interest in the underlying collateral, but the purported agreements explicitly called for this. *See, e.g.*, Section 2, Secured Promissory Note, iCap Pacific Income Fund 4, LLC ("...(i) payment of this Note and the Interest and Principal Amount hereunder shall be secured by a pledge of the equity securities of any direct wholly owned subsidiaries held by iCap Holding LLC, a wholly owned subsidiary of the Company ("Holding"), pursuant to Pledge and Security Agreement to be entered into by and between the holders of the Notes, the Company and Holding ("Security Agreement") **** and (ii) payment of this Note and the Interest and Principal Amount hereunder shall be guaranteed by Holding pursuant to a Guaranty Agreement to be entered into between Holding and the Company (the 'Guaranty Agreement').").



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

55. Defendants also employed equity financing devices to induce investments. Specifically, in or about January 2022, Defendants induced Shiyu Zhang to invest her funds in exchange for preferred equity units in Defendants Senza Kenmore, LLC. Plaintiff Zhang was told that the project would be completed by July or August of 2023, and that a long-term tenant was already signed up, which would in turn generate a gross return of 20% annually, with distributions to members ranging from 8-13%.

56. Regardless of whether one invested in debt or equity securities with iCap, the assurances Defendants gave to Plaintiffs and other investors were remarkably uniform and, upon information and belief, false or misleading when made. Through various channels and by a variety of means, these assurances included, without limitation:

a. That iCap would use investor funds diligently to acquire and develop residential and mixed-use real estate projects in the Pacific Northwest.

b. That iCap had special expertise, diligence, and a track record of success in the financial and real-estate development industries.

c. That iCap would purchase the rights to high-quality development projects at a price better than the market average.

d. That iCap's capital investments would be secured by a "valid and perfected" security interest in the companies that owned and controlled the real-estate projects.

e. That capital investments would also be secured by guaranties by iCap entities that could bear such obligation.

f. That, given their methods and transaction structure, iCap's investments products were "very safe" with almost "no risk" or "100% safe".

g. That iCap would purchase properties in cash with no debt and use the rental income or sell or refinance to maintain liquidity for redemption demands.



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

h. That iCap principal Chris Christensen transferred his $5 million personal residence to iCap to incrase the security of the investments.

i. That iCap's written transaction materials contained material contradictions and inconsistencies.

j. That iCap touted higher interest yields, high return on investment, and, the ability to add and withdraw funds like a standard bank account.

57. The following table summarizes the value of the principal investments that were made based upon these and other assurances, which Plaintiffs seek to recover in this action[2]:

| Plaintiff | iCap Pacific Income 4 | Senza Kenmore | iCap Vault |
|---|---|---|---|
| Li Tan | $500,000 | | $226,375.34 |
| Ting Shao | $150,000 | | |
| Fan Zhang | | | $538,866.23 |
| Haiyan Li | $220,000 | | $9,116.29 |
| Yuanyuan Li | | | $2,792.49 |
| Shiyu Zhang | | $250,000 | $294,057.76 |
| Yi Shan | | | $31,333.05 |
| Jia Lu | | | $861,602.16 |

58. In addition to full recovery of the amounts listed above, Plaintiffs seek all appropriate pre- and post-judgment interest, fees and costs, and any other appropriate monetary or equitable relief, in an amount to be determined at trial.

**B. Many—if not all—of Defendants' assurances were false or misleading or both.**

59. Although Plaintiffs' investigation is ongoing, their investigation as of this filing has led them to conclude that many—if not all—of iCap's assurances were false or misleading or both.

60. For example, Plaintiffs reasonably relied on Defendants' representations that they would use their funds diligently to finance lucrative real-estate development projects producing

[2] Plaintiffs reserve the right to amend to add additional claimants, claims and damages based on investments in additional funds as necessary or appropriate.



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

steady returns. The true condition of several of these alleged projects touted by Defendants, however, show that these representations were false or misleading or both.

61. In particular, although many Plaintiffs made their investments years ago, several of the properties in iCap's portfolio remain undeveloped to this day, some have not even begun the permitting process, and there is reason to question the ownership status of others.

<u>4740 17th Avenue NE, Seattle, WA 98105:</u>

62. To induce investments, iCap frequently promoted a mixed-use real property located near the University of Washington, at 4740 17th Avenue NE, Seattle, WA 98105 ("4740 Property"). Specifically, Defendants represented that the 4740 Property was under contract for purchase, that the sale would close in the summer of 2022, and that the property would be developed into a 93-unit modern apartment building.

63. Plaintiffs' investigation has revealed, however, that, one full year after the anticipated closing of the contract for purchase, there are no signs of pending or imminent development on the 4740 Property. Notably, a sign posted by the City of Seattle *on the neighboring lot* at 4742 17th Avenue NE states that the City is reviewing an application for a new 5-story apartment building with 91 units *on the neighboring lot*, which property is apparently not even owned by iCap, though it may be a financially responsible party:









CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

***

<u>5500 University Way NE, Seattle, WA 98105:</u>

64. To induce investments, Defendants touted that a property located at 5500 University Way NE, Seattle, WA 98105 ("5500 University Property") was part of its portfolio. To this day, however, the 5500 University Property is the location of two vacant, boarded up, and graffiti-laden structures, with no signs of recent maintenance let alone commercial development of any kind. As of June 2023, a sign posted by the City of Seattle at the property was illegible due to the graffiti. A laminated notice tied to a chain-link fence states that the City is interested in *deconstructing and salvaging the property*—unsurprising given its dilapidated condition.

65. Moreover, based on Plaintiffs' investigation thus far, there is no indication that an iCap-affiliated entity owns the 5500 University Property or has taken any steps toward developing it. Plaintiffs' investigation further indicates that the subject property was last sold in the year 1980:





***



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

1231 Campbell Way, Bremerton, WA 98310:

66. To induce investments, Defendants identified 1231 Campbell Way, Bremerton, WA 98310 ("1231 Campbell Way Property"), as a property in its portfolio. To date, however, the 1231 Campbell Way Property remains a vacant, overgrown, and undeveloped lot.

67. Publicly available information indicates that the property was last conveyed in October of 2018—well over four years later, the lot shows no visible signs of development:





***

15550 84th Avenue NW, Kenmore, WA 98028:

68. In or about January 2021, Defendants also touted a development project at 15550 84th Avenue, NW, Kenmore, WA 98028 to investors. Specifically, it touted that it was developing five senior-care homes and that an established and reputable senior care operator had signed a 10-year term lease agreement to commence upon completion. As of June 2023, however, the property remains unfinished. While some construction activity is apparent, a notice posted on the lot by the City of Kenmore states that it was being developed for five single family homes. In addition, the completion date listed on the notice was October 15, 2022. Based on its present condition, the parcel is nowhere near completion:



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900






***

<u>4525 NW Camas Meadows Drive, Camas, WA 98607:</u>

69. Defendants also identified 4525 NW Camas Meadows Drive, Camas, WA 98607 ("Camas Meadows Property") as a property in its development portfolio to induce investors to invest.

70. As with others, however, to date the Camas Meadows Property remains an undeveloped and vacant lot. As of June 2023, the property showed no sign of any current or development on the property. In fact, it appears the Camas Meadows Property is currently being used as overflow parking for an adjacent golf course:









CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

***

71. The status and condition of the properties listed above call into question assurances and nature of disclosures Defendants made to induce Plaintiffs to invest—it also raises questions about how, in fact, the funds raised from Plaintiffs were actually used. Their present condition is all the more inexplicable given iCap's touted success in raising a staggering $150 million from Plaintiffs and other investors over the past several years.[3]

72. In addition, Defendants induced Plaintiffs and other investors to invest by assuring them that their principal and earnings would be secured by "valid and perfected" security interests in the entities that owned the underlying real estate and any and all improvements thereon. Plaintiffs reasonably relied on Defendants' representation that their investments would be secured by "valid and perfected" security interests in the underlying collateral when deciding to invest.

73. Upon investigation, however, while the purported "security agreements" presented by Defendants stated that Plaintiffs were granted "a valid and perfected first priority security interest in the Pledged Interests, free of all liens, encumbrances, transfer restrictions and adverse claims," Defendants neither filed UCC-1 documentation with the state nor were the purportedly "Pledged Interests" specifically defined or identified in the security agreements.

74. Furthermore, the promissory notes for iCap Pacific Income Fund 4 LLC were secured by membership interests in an entity referred to as "iCap Holding, LLC." In a security agreement presented to Plaintiffs and purportedly signed by Chris Christensen and "iCap Holding, LLC," iCap represented that "[iCap Holding, LLC] is a limited liability company duly organized, validly existing, and in good standing under the laws of the State of Delaware" and,

[3] Another property in iCap's investment and development portfolio, located at 2715 Sunset Lane NE, Renton, WA 98056 ("2715 Sunset Lane Property"), and owned by Colpitts Sunset, LLC, is believed to be further along in the development process and may presently be marketed for sale. To the extent necessary or required, Plaintiffs will derive their recovery from the liquidation of the properties listed herein, including the 2715 Sunset Lane Property.



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

as was the case for each, purportedly granted Plaintiffs "a valid and perfected first priority security interest" therein. Upon investigation, however, "iCap Holding, LLC," is apparently not presently, nor has it ever been, an existing entity under the laws of Washington State or Delaware, or elsewhere.

75. Defendants also touted at various times the fact that Defendant Chris Christensen transferred title of his personal residence, located at 27122 SW Grand Ridge DR, Issaquah, Washington ("Grand Ridge Property"), and currently appraised at $5.8 million, to induce investments. Unbeknownst to Plaintiffs and other investors, however, in November 2020, iCap transferred ownership of the Grand Ridge Property back to Christensen and his wife. After iCap quitclaimed the Issaquah residence back to the Christensen marital community, the Christensen marital unit then encumbered the property with a new mortgage through Angel Oak Mortgage Solutions. Upon information and belief, the transactions involving Christensen's personal residence were carried out to personally benefit Christensen and his marital community at Plaintiffs' expense and to otherwise shield the Grand Ridge Property from creditors.

**C. Defendants have failed to return Plaintiffs' funds and, instead, have refused to comply with Plaintiffs' reasonable requests for repayment.**

76. Defendants also induced Plaintiffs to invest by promising they would benefit from steady interest on their principal, and that they would receive the right to transfer and withdraw funds as needed in many cases. In connection with these assurances, Defendants told Plaintiffs that it would take proper measures to ensure sufficient liquidity to meet its payment obligations to Plaintiffs and other investors—such as retaining capital reserves, generating rent and sale proceeds, and invoking refinancing options. Based on recent events this was clearly untrue.

77. Plaintiffs began investing in Defendants' capital funds as early as early 2020. Plaintiffs made additional investments as late as Q1 2023—well after iCap knew or reasonably should have known that it could not meet its obligations. Indeed, one or more members of the



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Plaintiffs herein invested just weeks before iCap announced it could no longer meet its obligations to Plaintiffs and other investors.

78. Specifically, in early 2023, iCap began ignoring Plaintiffs' withdrawal and repayment requests.[4] Afterwards, Plaintiff Tan made multiple attempts to contact Defendants herself directly, all of which were ignored.[5]

79. On March 20, 2023, iCap circulated the following alarming notice to Plaintiffs:

iCAP EQUITY

Date: March 20, 2023

> The current situation has also impacted the real estate portfolio that iCap manages and therefore our ability to return capital to investors under the time frame originally prescribed in our disclosure documents. We are writing to inform you that at this time we are not able to continue making monthly interest payments. Although this is concerning, please understand that our goal remains to do what is in the best interest of the investors. To that end, our full attention has been turned to the preservation of your capital and towards returning all principal balances to our investors as soon as is reasonably practicable.

We are in the process of preparing a detailed report to provide information regarding the state of our portfolio, the impact of recent economic conditions on the portfolio, and a proposed plan for how to move forward. We will reach out to all investors to set up a call to present this plan, which we expect to have ready in the next few weeks. We anticipate that our forthcoming report will respond to the series of questions we anticipate this correspondence will generate, and we are respectfully requesting your patience so we may respond to those questions after our report is disseminated.

In the interim, please know that the entire iCap team and I are committed to doing the hard work needed to provide our investors the best possible outcome for their investments, and we will be working tirelessly to achieve this goal. If you have any questions, please contact our office for further information.

Sincerely,

Chris Christensen
CEO

STERLING PLAZA I, 3535 FACTORIA BLVD. SE, SUITE 500, BELLEVUE, WA 98006
Office 425-278-9030 • Fax 425-278-9025 • Website ICAPEQUITY.COM

---

[4] For example, Plaintiff Tan submitted withdrawal and repayment requests on or about January 3, 2023, February 6, 2023, and February 14, 2023, and iCap failed to comply. Shiyu Zhang submitted requests on or about January 9, 2023, January 23, 2023, and February 4, 2023, and March 10, 2023; Plaintiff Haiyan Li submitted requests on or about April 3, 2023 and April 26, 2023; Plaintiff Yuanyuan Li submitted requests on or about March 20, 2023 and April 27, 2023; and Plaintiff Ting Shao submitted requests on or about May 24, 2023. Again, Defendants failed to comply. To the extent the agreements are found to be binding and / or not rescinded on account of Defendants' fraud or misrepresentation, each of these payments were contractually required under the applicable promissory notes.

[5] Desperate for answers, Ms. Tan personally visited iCap's offices in person on February 28, 2023, where she demanded to speak to Defendant Chris Christensen personally, at which time Defendant Christensen assured Ms. Tan that iCap would remit all of her funds by March 7. Of course, this did not occur.



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

80. The correspondence included the glaring admission that iCap was "not able to continue making monthly interest payments" or return investor capital "under the time frame originally prescribed…"

81. On April 6, 2023, iCap wrote to investors again, stating that iCap was "working diligently on a portfolio report and a plan for moving forward." But Plaintiffs' funds were never released as requested and no concrete details were ever provided.[6]

82. On May 10, 2023, Defendants held a conference with Plaintiffs and other investors. At the conference, Defendants Chris Christensen and Jim Christensen attempted to reassure Plaintiffs that iCap would fulfill its obligations to repay their funds, and boasted an estimated portfolio value upon completion of over $380 million.

83. Additionally, Defendants Chris Christensen and Jim Christensen proposed a new venture under which the iCap's development portfolio would be transferred to a new consolidated entity called "Invalus," and that iCap's obligations to repay Plaintiffs would be converted into a proportionate share of equity in this new entity:




[6] On or about April 7, 2023, Defendant Chris Christensen met with Ms. Tan again at iCap's offices where she was assured, once again, that iCap would start making payments to repay her investment in the "Vault." Mr. Christensen assured her that iCap could start making payments every two weeks beginning as soon as April 14; but, as before, the payments iCap promised her were never received.



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

84. Defendants also told Plaintiffs that Invalus was already in operation and that it had already developed a real estate portfolio that would be worth approximately $100 million upon completion. Defendants further assured Plaintiffs that the value of this new consolidated venture would be over $480 million. As set forth below, Plaintiffs suspect that Defendants began diverting iCap assets to Invalus well before the May 10, 2023 meeting.

85. On May 12, 2023, Plaintiffs received additional written correspondence from iCap via email. In the May 12 email, iCap represented again that it would soon be providing "a comprehensive review of [each investor's] holdings and upcoming plans as we implement the plans going forward." Again, however, no such information was provided and no payments were received. Instead, on May 31, iCap wrote to investors again, stating that its "expected timeframes" for providing the information that it had promised in just a few weeks needed to be "extended" due to staff reduction.

86. On or about June 9, 2023, Plaintiffs, through the undersigned, wrote the Christensens and iCap, recounting Defendants' breaches and demanding, as a compromise, just the return of the capital investments while reserving all rights at law or in equity.[7]

87. Plaintiffs wrote to Defendants again on June 12, 2023, and then again on June 23, 2023. Plaintiffs' June 23, 2023, correspondence advised Defendants that Plaintiffs were extending—voluntarily—the due date for Defendants' response to Plaintiffs' compromise proposal to July 10, 2023. Plaintiffs' June 23 correspondence reiterated that Plaintiffs were reserving their rights to pursue claims of fraud and appropriate legal and equitable remedies, including, but not limited to, orders of rescission of any and alleged transaction documents, be it under the law of contracts, tort, restitution, or otherwise.

[7] Plaintiffs' June 9, 2023 correspondence also issued a blanket preservation demand of all iCap documentation and information that could be deemed relevant or discoverable in any future litigation between the parties.



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

88. Plaintiffs' June 23 correspondence further stated that in the event Defendants rejected the compromise proposal, Plaintiffs requested prompt production of all relevant financial, tax, and accounting information. To facilitate iCap's compliance with this request, Plaintiffs offered to supply a forensic examiner, at Plaintiffs' own expense, to extract the requested information from Defendants' offices and equipment. No response was received.

89. Notably, shortly before Plaintiffs' June 23, 2023 correspondence, Defendant Chris Christensen wrote Plaintiffs' counsel an email, apparently in response to Plaintiffs' June 9, 2023 correspondence, in which he confirmed iCap's inability to meet its obligations to Plaintiffs. Specifically, Mr. Christensen stated: "As has been communicated to investors, the environment has turned, and the portfolios will not yield sufficient return to meet all obligations – especially in a liquidation scenario." Although a call was subsequently arranged and initiated with Defendant Christensen, upon learning that Plaintiffs' private investigator was on the call, Mr. Christensen refused to participate.

90. On June 30, 2023, iCap sent yet another email blast to investors—once again failing to deliver on its promises of repayments and information that it had made over the past several months. In its June 30, 2023 correspondence, iCap again claimed that it had substantially downsized its management team and that, as a result, it was taking "longer than expected" to provide Plaintiffs and other investors with information about the status of their investments and repayment requests:



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

---------------- Original ----------------

**From:** "Investor Relations"<investor@icapequity.com>;
**Date:** Fri, Jun 30, 2023 03:26 PM
**To:** "Investor Relations"<investor@icapequity.com>;
**Subject:** iCap Updates - 6/30

Dear Investors and Advisors,
We want to provide this email update for you. It has taken longer than planned to deliver the additional information we discussed previously. This is due to the reduction of our management team, which now consists of only three people. It is also due to the need for additional legal analysis that was not initially expected, but which must be completed before we can send more information. We continue to seek the best possible outcome for our investors and wanted to let you know where things stand. We expect to complete the legal analysis with our attorneys over the next two weeks and then reach out to everyone.
Thank you.
Investor Relations

iCAP EQUITY
3535 Factoria Blvd. SE, Suite 500
Bellevue, WA 98006

91. Meanwhile, iCap has begun steadily deconstructing its website in recent days. In the process, iCap has removed Plaintiffs' access to the investor portal, which had been the only remaining means to access information about their respective accounts. Investors attempting to access the portal now see only a landing page, stating that the portal is "down for maintenance":




92. The failure to provide any assurances that their funds will be returned anytime soon—coupled with the chilling news that iCap's management and operations were declining to a skeleton crew of a few individuals directly implicated in Defendants' misconduct, plus the apparent decision to terminate Plaintiffs' only means of access to information about their own accounts—has understandably spurred Plaintiffs to take prompt action to prevent the total loss of their capital.



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

**D. Defendants appear to have initiated a near-identical scheme called "Invalus" using the same playbook that they used to solicit Plaintiffs.**

93. Upon information belief, Plaintiffs strongly suspect that Defendants have used and or are presently using their new venture called "Invalus" to divert iCap assets. Based on its website, Defendant Jim Christensen, Chris Christensen's brother, serves as CEO of Invalus. As iCap continues to communicate to its investors that it will not be able to return their funds, Invalus is presently marketing ongoing projects as investment opportunities—Invalus even appears to be utilizing iCap-funded projects to promote its services to the public.

94. Without limitation, the following images and illustrations taken from Invalus' "Past Projects" page are believed to be, in reality, iCap projects used to induce Plaintiffs to invest:















CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900










*[Source: www.invalus.com/team-4, www.invalus.com/about-3, last accessed July 2023]*

***

95. Plaintiffs have also grown concerned that, despite Defendants' many assurances that their investment funds would only be used to invest in real estate, Defendants may have diverted their capital to other matters beyond the contemplation of the parties, including experimental blockchain-based "tokenized" platforms.

96. Specifically, in July 2022, Defendants established Equity Slice Technologies, Inc., which publicly represents itself as investing in "tokenized real estate."

97. With this action, Plaintiffs seek all available legal and equitable remedies to recover their funds, including without limitation equitable subordination, piercing of the corporate veil, and disgorgement or "clawing back" of funds diverted to other entities—including, but not limited to, "Invalus"—or funds diverted for personal gain.



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

## VIOLATIONS OF CHAPTER 21.20 RCW

98. Plaintiffs reallege and incorporate all allegations of this Complaint.

99. Defendants' offer and sale to Plaintiffs of the secured promissory notes described herein constitutes a securities transaction(s) under Washington law.

100. Defendants made untrue statements of material fact and/or omitted to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading. In addition, Defendants employed devices, schemes, and artifices to defraud Plaintiffs and have engaged in acts, practices, and a course of conduct that operates as a fraud or deceit upon Plaintiffs in connection with the subject transaction(s) and after.

101. Defendants' statements, assurances, and omissions alleged herein, and determined through further investigation and discovery, induced Plaintiffs to invest their funds and, later, to delay seeking the full return of their funds and otherwise assert their legal rights. Defendants are responsible for perpetuating a continuing fraud and misrepresentation.

102. Among other things, and without limitation, Defendants induced Plaintiffs to purchase debt and equity securities based upon false or misleading assurances about the security, profitability, and liquidity of the investments—as well as Defendants' purported expertise, diligence, responsibility, and track record of success. Defendants induced Plaintiffs to invest by assuring them that their principal and earnings would be secured by "valid and perfected" security interests in the entities owning real estate and improvements thereon, and in some cases guaranties. Defendants induced Plaintiffs to invest by offering a pledge and security agreement signed by an entity that does not exist. Defendants also induced Plaintiffs to invest based on assurances about iCap's investment portfolio, but many of the properties are either vacant,



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

undeveloped, or the ownership is in question. Defendants also induced Plaintiffs to invest based on assurances that Chris Christensen transferred his $5.8 million personal residence to iCap to ensure its liquidity and assets for future financing, among other things. Defendants also induced Plaintiffs to invest by assuring them of the return they could expect in a short period of time.

103. Plaintiffs reincorporate the items in paragraph 56 that induced Plaintiffs and other investors to invest, and maintain their investments, and every other material misrepresentation and omissions alleged herein, as well as those that will be identified in discovery. Defendants continued accepting investments from Plaintiffs even as late as 2023 which is, upon information and belief, well after Defendants knew or should have known it could not meet its obligations and or had a duty to disclose.

104. Defendants made the false or misleading statements and or omissions set forth herein to induce Plaintiffs to invest and or with reason to expect that Plaintiffs would act or refrain from acting. In addition, Defendants' acted with no intention to perform, without care or concern about whether performance would occur, and/or they made the statements or omissions in reckless disregard of ascertaining the truth or falsity. Defendants' statements and omissions were material.

105. Defendants' untrue statements and/or omissions induced Plaintiffs to invest in the securities at issue, and maintain their investments, or put off taking action to protect themselves, causing Plaintiffs to suffer damages in an amount to be proven at trial.

106. Defendants are jointly and severally liable for their acts and omissions, as applicable, and as alter egos. Plaintiffs are entitled to all rights and remedies provided by Washington law and RCW 21.20, including, without limitation, rescission and return of their investment funds, legal and equitable subordination, together with interest, costs, and reasonable attorneys' fees. To the extent required, Plaintiffs hereby tender back to Defendants all securities they purchased.



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

**<u>SECOND CAUSE OF ACTION</u>**

**FRAUD / FRAUDULENT INDUCEMENT /**

**FRAUDULENT CONCEALMENT / CONTINUING FRAUD**

107. Plaintiffs reallege and incorporate all allegations of this Complaint.

108. Defendants made untrue statements of material fact and/or omitted to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading. In addition, Defendants employed devices, schemes, and artifices to defraud Plaintiffs and have engaged in acts, practices, and a course of conduct that operates as a fraud or deceit upon Plaintiffs in connection with the subject transaction(s) and after.

109. Defendants' statements, assurances, and omissions alleged herein, and determined through further investigation and discovery, induced Plaintiffs to invest their funds and, later, to delay seeking the full return of their funds and otherwise assert their legal rights. Upon information and belief, Defendants committed a continuing fraud and misrepresentation and fraudulent concealment.

110. Among other things, and without limitation, Defendants induced Plaintiffs to purchase debt and equity securities based upon false or misleading assurances about the security, profitability, and liquidity of the investments—as well as Defendants' purported expertise, diligence, responsibility, and track record of success. Defendants induced Plaintiffs to invest by assuring them that their principal and earnings would be secured by "valid and perfected" security interests in the entities owning real estate and improvements thereon. Defendants induced Plaintiffs to invest by offering a pledge and security agreement signed by an entity that does not exist. Defendants also induced Plaintiffs to invest based on assurances about iCap's investment portfolio, but many of the properties are either vacant, undeveloped, or the ownership is in question. Defendants also induced Plaintiffs to invest based on assurances that Chris



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Christensen transferred his $5.8 million personal residence to iCap to ensure its liquidity and assets for future financing, among other things. Defendants also induced Plaintiffs to invest by assuring them of the return they could expect in a short period of time.

111. Plaintiffs reincorporate the items in paragraph 56 that induced Plaintiffs and other investors to invest, and maintain their investments, and every other material misrepresentation and omissions alleged herein, as well as those that will be identified in discovery. Defendants continued accepting investments from Plaintiffs even as late as 2023 which is, upon information and belief, well after Defendants knew or should have known it could not meet its obligations and or had a duty to disclose.

112. Defendants made the false or misleading statements and or omissions to induce Plaintiffs to invest and or with reason to expect that Plaintiffs would act or refrain from acting. Defendants' acted with no intention to perform, without care or concern about whether performance would occur, and or they made the statements or omissions in reckless disregard of ascertaining the truth or falsity. Plaintiffs had a right to rely and justifiably relied on Defendants' statements and omissions. Defendants' statements or omissions were material to their decision to invest or maintain their investments and (a) Defendants purported to have special knowledge of the matter that Plaintiffs lacked, (b) Defendants stood in a fiduciary relation or other similar relation of trust and confidence to Plaintiffs, (c) Defendants successfully secured the confidence of Plaintiffs, and or (d) the circumstances were such that Defendants should have expected that Plaintiffs would rely on and expect Defendants to carry out such statements.

113. Defendants' untrue statements and or omissions induced Plaintiffs to invest in the securities at issue, and maintain their investments, or put off taking action to protect themselves, causing Plaintiffs to suffer damages in an amount to be proven at trial.

114. Defendants are jointly and severally liable for their acts and omissions, as applicable, and as alter egos. Plaintiffs are entitled to all rights and remedies provided by



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Washington law, including, without limitation, rescission and return of their investment funds, legal and equitable subordination, together with interest, costs, and reasonable attorneys' fees.

**THIRD CAUSE OF ACTION**

**VIOLATION OF WASHINGTON CONSUMER PROTECTION ACT**

115. Plaintiffs reallege and incorporate all allegations of this Complaint.

116. Defendants engaged in unfair or deceptive acts or practices in offering and selling securities in the state of Washington, as well as after the point of sale.

117. Defendants' unfair or deceptive acts or practices occurred in trade or commerce.

118. Defendants' unfair or deceptive acts or practices affect the public interest. Defendants' unlawful practices continue to this day.

119. Plaintiffs have been injured in their business and property, as Defendants accepted Plaintiffs' funds and have failed to repay Plaintiffs the funds invested and otherwise deal with them in a fair and non-deceptive manner after the subject transactions were executed. Defendants' unfair or deceptive acts or practices are ongoing and are a proximate cause of Plaintiffs' injuries.

120. Plaintiffs have been damaged in an amount to be proven at trial. Plaintiffs are entitled to an award of attorneys' fees and costs and treble damages pursuant to RCW 19.86.090.

**FOURTH CAUSE OF ACTION**

**NEGLIGENT MISREPRESENTATION**

121. Plaintiffs reallege and incorporate all allegations of this Complaint.

122. Defendants misrepresented material facts to Plaintiffs in order to induce Plaintiffs to invest funds.

123. Defendants knew or should have known that the information was supplied to guide Plaintiffs in the business transactions.

124. Defendants, directly or through their agents, were negligent in communicating the false information.



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

125. Plaintiffs reasonably relied on the false information, which induced Plaintiffs to enter into the transactions, and the false information caused damages to Plaintiffs in an amount to be proven at trial. Plaintiffs are also entitled to injunctive, declaratory, and equitable relief against Defendants.

**FIFTH CAUSE OF ACTION**

**CIVIL CONSPIRACY**

126. Plaintiffs reallege and incorporate all allegations of this Complaint.

127. Upon information and belief, Defendants developed a plan or scheme to engage in the acts and omissions alleged herein, Defendants combined to accomplish an unlawful purpose and/or a lawful purpose by unlawful means. Defendants committed overt acts in furtherance of this scheme as alleged herein.

128. Defendants further entered into express or implied agreements to accomplish the object of said conspiracy.

129. Defendants are jointly and severally liable to Plaintiffs for damages and attorneys' fees and costs, in an amount to be proven at trial. Plaintiffs are entitled to all legal and equitable remedies by virtue of Defendants' conspiracy.

**SIXTH CAUSE OF ACTION**

**VIOLATION OF CHAPTER 19.40 RCW**

130. Plaintiffs reallege and incorporate all allegations of this Complaint.

131. On November 25, 2020, Defendant Chris Christensen, through his authority as CEO of iCap, filed a quitclaim deed conveying ownership of the Issaquah property to himself, Chris Christensen, and his wife.

132. On information and belief, the property was transferred without consideration, reasonably equivalent value, and to hinder, delay, or secrete that money away from Plaintiffs, who are creditors of Defendants.



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

133. One or more Defendants were insolvent at the time or became insolvent as a result of such transfer.

134. Discovery in this action may reveal other fraudulent transfers from or between Defendants and, therefore, Plaintiffs reserve the right to supplement.

135. The transfers of assets alleged herein were a voidable transfer under Ch. 19.40 RCW and thus should be voided to the extent necessary to satisfy Plaintiffs' claims.

**SEVENTH (ALTERNATIVE) CAUSE OF ACTION**

**ANTICIPATORY REPUDIATION**

**(Plaintiffs Ting Shao and Haiyan Li against iCap Pacific Fund 4, LLC, Senza Kenmore, LLC, iCap Pacific NW Management, LLC, and Chris Christensen)**

136. Plaintiffs reallege and incorporate all allegations of this Complaint.

137. In the alternative to Causes of Action One through Six above, and insofar as the "secured promissory notes," and related "pledge and security" and "guaranty agreements," and Senza Kenmore, LLC's "operating agreement" furnished by Defendants are deemed enforceable, *and* Plaintiffs make an election to pursue remedies under such promissory notes at trial rather than rescission for fraud and misrepresentation, Defendants and any owners, coconspirators, and alter egos, should be held liable for anticipatory repudiation as follows:

138. Defendants' notes for iCap Pacific Income Fund 4, LLC purported to give Plaintiffs and other investors the right to repayment of their outstanding principal and all accrued interest on demand prior to maturity, starting on the third anniversary of the issue date:

139. Section 1(b) of the iCap Pacific Income Fund 4, LLC note provides in part: "At any time following the third anniversary of the Issue Date, Holder may require the Company to repay all or a portion of the Principal Amount and all unpaid Interest then due and payable (a "Demand Repayment"). Any Demand Repayment may be made through the Company's investor portal accessible a www.icapequity.com, an electronic application as provided by the Company to



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

Holder, or by delivery to the Company of a demand notice in the form as attached hereto as Exhibit A (each as so delivered, a "Demand Notice").

140. The third anniversary of Plaintiff Hayan Li's issue date is on January 13, 2025.

141. The third anniversary of Plaintiff Ting Shao's issue date is January 20, 2025.

142. As set forth herein, Plaintiffs began making withdrawal requests in early 2023, none of which have been fulfilled. As of March 2023, and thereafter, Defendants have repeatedly notified Plaintiffs that Defendants, despite Plaintiffs' demands, are unable to meet their obligations to the Plaintiffs who invested in iCap Pacific Fund 4, LLC and, iCap Investments, LLC. By doing so under the facts and circumstances alleged herein, Defendants iCap Pacific Fund 4, LLC have committed anticipatory repudiation of their obligations to Plaintiffs, respectively, causing Plaintiffs damages in an amount to be proven at trial. To the extent Plaintiffs pursue this alternative theory of liability at trial, they are entitled to all remedies available under such transaction documents and Washington law for anticipatory repudiation.

143. Section 2 of the secured promissory note states: "…(i) payment of this Note and the Interest and Principal Amount hereunder shall be secured by a pledge of the equity securities of any direct wholly owned subsidiaries held by iCap Holding LLC, a wholly owned subsidiary of the Company ("Holding"), pursuant to Pledge and Security Agreement to be entered into by and between the holders of the Notes, the Company and Holding ("Security Agreement") **** "and (ii) payment of this Note and the Interest and Principal Amount hereunder shall be guaranteed by Holding pursuant to a Guaranty Agreement to be entered into between Holding and the Company (the 'Guaranty Agreement')."

144. Section 12 of Defendants' "secured promissory notes" for iCap Pacific Income Fund 4, LLC, provides for remedies for "threatened breach" as follows:

> The Company acknowledges that a breach by it of its obligations hereunder will cause irreparable harm to the Holder, by vitiating the intent and purpose of the transaction contemplated hereby. Accordingly, except as expressly set forth



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

> herein or in the Transaction Documents the Company acknowledges that the remedy at law for a breach of its obligations under this Note will be inadequate and agrees, in the event of a breach or threatened breach by the Company of the provisions of this Note, that the holder shall be entitled, in addition to all other available remedies at law or in equity, and in addition to the penalties assessable herein, to an injunction or injunctions restraining, preventing or curing any breach of this Note and to enforce specifically the terms and provisions thereof, without the necessity of showing economic loss and without any bond or other security being required. If default is made in payment of this Note, the Company shall pay the Holders costs of collection, including reasonable attorney's fees.

145. Section 6 provides: "All rights and remedies of the Holder existing hereunder are cumulative to, and not exclusive of, any rights or remedies otherwise available."

146. The "secured promissory note" incorporates a purported "pledge and security agreement," which in turn purports to be signed by Defendant Chris Christensen.

147. Section 10 incorporates Section 12 of the "secured promissory note."

148. The "secured promissory note" incorporates a purported "guaranty agreement," which in turn purports to be signed by Defendant Chris Christensen.

149. Section 1 of states that "Guarantor hereby unconditionally, absolutely and irrevocably guarantees the full and timely performance of all of the obligations of [iCap Pacific Income Fund 4, LLC] under the Notes, including the due and punctual payment of the principal and interest of the Note and all money due or that may become due…"

150. Section 4 states that "Guarantor agrees that its obligation to make payment under the terms of this Guaranty shall not be impaired, modified, changes, released or limited in any manner by any impairment, modification change, release, defense or limitation of the liability of Borrower…"

151. Section 10 incorporates Section 12 of the "secured promissory note," which provides for the availability of remedies in the event of a "threatened breach."

152. Based on the facts and circumstances alleged herein, iCap, including without limitation iCap Pacific Income Fund 4, LLC, and Chris Christensen, and any other owners,



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

coconspirators, and alter egos, should be deemed liable for anticipatory repudiation of their respective obligations under the purported transaction documents as applicable. To the extent Plaintiffs pursue this alternative theory of liability at trial, they are entitled to all remedies available under such transaction documents and Washington law.

**EIGHTH (ALTERNATIVE) CAUSE OF ACTION**

**BREACH OF CONTRACT**

**(Plaintiffs against *iCap Pacific Income Fund 4, LLC*; Chris Christensen; iCap Vault 1, LLC; Senza Kenmore, LLC; and iCap Pacific NW Management, LLC)**

153. Plaintiffs reallege and incorporate all allegations of this Complaint.

154. This cause of action is pled in the alternative to Causes of Action One through Six pled above. Specifically, insofar as the "secured promissory notes," and related security and guaranty agreements, and the Senza Kenmore, LLC operating agreement furnished by Defendants are deemed enforceable, *and* Plaintiffs make an election to pursue remedies under such transaction documents at trial rather than rescission for fraud and misrepresentation, Defendants iCap Vault 1, LLC, Senza Kenmore, LLC, and iCap Pacific NW Management, LLC, and any owners, coconspirators, and alter egos, should be held liable for breach of contract as follows:

155. Defendants' notes for iCap Pacific Income Fund 4, LLC, and iCap Vault 1, LLC, purported to give Plaintiffs and other investors the right to repayment of their outstanding principal and all accrued interest upon demand prior to maturity. As set forth herein, Plaintiffs began making withdrawal requests in early 2023, none of which have been fulfilled.

***iCap Pacific Income Fund 4, LLC and Chris Christensen*:**

156. Defendants iCap Pacific Income Fund 4, LLC and Chris Christensen breached their obligations to Plaintiffs under the purported iCap Pacific Income Fund 4, LLC "secured promissory note," "pledge and security agreement," and "guaranty agreement."



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

157. Section 1(b) of the iCap Pacific Income Fund 4, LLC note, which provides in part:

> At any time following the third anniversary of the Issue Date, Holder may require the Company to repay all or a portion of the Principal Amount and all unpaid Interest then due and payable (a "Demand Repayment"). Any Demand Repayment may be made through the Company's investor portal accessible a www.icapequity.com, an electronic application as provided by the Company to Holder, or by delivery to the Company of a demand notice in the form as attached hereto as Exhibit A.

158. Plaintiff Tan's promissory note was issued on February 19, 2020.

159. On February 21, 2023, Plaintiff Tan delivered a Demand Notice to Defendants for repayment of her full balance and interest accrued, approximately $500,000.

160. As of the filing of this Complaint, Defendants have not returned any of the funds Plaintiff Tan demanded from the iCap Pacific Income Fund 4, LLC.

161. Section 2 states:

> …(i) payment of this Note and the Interest and Principal Amount hereunder shall be secured by a pledge of the equity securities of any direct wholly owned subsidiaries held by iCap Holding LLC, a wholly owned subsidiary of the Company ("Holding"), pursuant to Pledge and Security Agreement to be entered into by and between the holders of the Notes, the Company and Holding ("Security Agreement") **** "and (ii) payment of this Note and the Interest and Principal Amount hereunder shall be guaranteed by Holding pursuant to a Guaranty Agreement to be entered into between Holding and the Company.

162. This provision was breached. Among other things, the purported pledgor and guarantor was an entity purportedly called "iCap Holding, LLC," a company which does not exist.

163. Section 12 of Defendants' "secured promissory notes" for iCap Pacific Income Fund 4, LLC, provides as follows:

> The Company acknowledges that a breach by it of its obligations hereunder will cause irreparable harm to the Holder, by vitiating the intent and purpose of the transaction contemplated hereby. Accordingly, except as expressly set forth herein or in the Transaction Documents the Company acknowledges that the remedy at law for a breach of its obligations under this Note will be inadequate and agrees, in the event of a breach or threatened breach by the Company of the



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

> provisions of this Note, that the holder shall be entitled, in addition to all other available remedies at law or in equity, and in addition to the penalties assessable herein, to an injunction or injunctions restraining, preventing or curing any breach of this Note and to enforce specifically the terms and provisions thereof, without the necessity of showing economic loss and without any bond or other security being required. If default is made in payment of this Note, the Company shall pay the Holders costs of collection, including reasonable attorney's fees.

164. Section 6 provides: "All rights and remedies of the Holder existing hereunder are cumulative to, and not exclusive of, any rights or remedies otherwise available."

165. Upon information and belief, and without limitation, Defendants further breached the following terms with respect to Plaintiffs Tan, Shao, and Li.

166. The "secured promissory note" incorporates a purported "pledge and security agreement," which in turn purports to be signed by Defendant Chris Christensen.

167. The purported "pledge and security agreement" defines the "Pledged Interests" as "Class A membership interests or shares of capital stock of … the Portfolio SPEs…"

168. Section 1 of the purported "pledge and security agreement" states that, "[t]o secure the prompt payment and full and faithful performance of the Obligations of Pledgor to Pledgees pursuant to the Notes", iCap granted Plaintiffs an interest in "(i) the Pledged Interests… (ii) any distribution, whether of cash or in kind, in connection with relating to, or in respect of the applicable Pledged Interests… (iii) any and all substitutions, renewals, improvements and replacements of Pledged Interests… and (iv) all proceeds arising from any of the foregoing."

169. Section 4 purposes to represent and warrant to Plaintiffs that the pledged interests "do, or shall, constitute all of Pledgor's ownership in the Portfolio SPEs."

170. Section 4 purports to represent and warrant to Plaintiffs that "the Pledgor is a limited liability company duly organized, validly existing, and in good standing under the laws of the State of Delaware…" As noted herein, there is no record of an entity ever existing in Delaware or Washington called "iCap Holding, LLC."



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

171. Section 4 also purports to represent and warrant that "Pledgor is the sole owner of the Pledge Interests … and has granted to [Plaintiffs] a valid and perfected first priority security interest in the Pledged Interests, free of liens, encumbrances, transfer restrictions and adverse claims."

172. Section 5 purports to covenant to Plaintiffs that "the Pledgor shall not sell, gift, pledge, exchange or otherwise transfer the Pledged Interests" without a majority of noteholders' approval.

173. Section 5 further purports to covenant that "Pledgor will pay and discharge when due all of its material obligations which if unpaid when due might by law give rise to a lien on the Pledged Interests…"

174. Section 6 purports to indemnify Plaintiffs:

> [F]rom any and all damages, loses, liabilities, taxes and expenses (including without limitation, attorney's fees and costs) resulting directly or indirectly from (a) any inaccuracy, misrepresentation, breach of warranty, or non-fulfillment of any of the representations and warranties … or any actions, omissions or statements of fact inconsistent with in any material respect any such representation or warrant, [and] (b) any failure by [iCap] to perform or comply with any agreement, covenant or obligation of the parties' agreement.

175. Section 10 incorporates Section 12 of the "secured promissory note."

176. The "secured promissory note" incorporates a purported "guaranty agreement," which in turn purports to be signed by Defendant Chris Christensen.

177. Section 1 of states that "Guarantor … unconditionally, absolutely and irrevocably guarantees the full and timely performance of all of the obligations of [iCap Pacific Income Fund 4, LLC] under the Notes, including the due and punctual payment of the principal and interest of the Note and all money due or that may become due…"

178. Section 4 states that "Guarantor agrees that its obligation to make payment under the terms of this Guaranty shall not be impaired, modified, changes, released or limited in any



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

manner by any impairment, modification change, release, defense or limitation of the liability of Borrower…"

179. Section 6 purports to represent and warrant that "Guarantor is a limited liability company duly organized, validly existing, and in good standing under the laws of the State of Delaware…" As noted herein, there is no record of an entity ever existing in Delaware or Washington called "iCap Holding, LLC."

180. Section 7 purports to provide that "this Guaranty shall be binding upon and enforceable against Guarantor and its successors and assigns."

181. Section 10 incorporates Section 12 of the "secured promissory note."

***

***iCap Vault 1, LLC:***

182. Defendant breached its obligations to Plaintiffs under the iCap Vault 1, LLC "secured promissory note," "pledge and security agreement," and "guaranty agreement." with respect to Plaintiffs Li Tan, Fan Zhang, Haiyan Li, Yuanyuan Li, Shiyu Zhang, Yi Shan and Jia Lu.

183. Section 1 of Defendants' "secured promissory notes" for iCap Vault 1, LLC, purport to give Plaintiffs the right to withdraw their funds at any time after the effective date, and requires iCap to "pay the requested funds to Holder within 30 days, but the Company shall utilize its commercially reasonable efforts to pay the requested funds to holder within 5 business days."

184. Each of Plaintiffs submitted notices for repayment of their full balance and interest accrued at the latest of June 9, 2023.



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

185. As of the filing of this Complaint, these repayment demands have not been fulfilled.

186. Defendants have failed to fulfill their obligations under the iCap Vault 1, LLC "secured promissory note," and "pledge and security agreement" and "guaranty agreement, as applicable, in other ways.

187. As set forth herein, Defendants breached Section 2, which states and represents:

> …Payment of this Note and the Interest and Principal Amount hereunder shall be secured by a pledge of the equity securities of any direct wholly owned subsidiaries held by Vault Holding, LLC, a wholly owned subsidiary of the Company ("Holding"), pursuant to Pledge and Security Agreement to be entered into by and between the holders of the Notes, the Company and Holding ("Security Agreement") **** and "[p]ayment of this Note and the Interest and Principal Amount … hereunder shall be guaranteed by Holding pursuant to a Guaranty Agreement to be entered into between Holding and the Company.

188. Section 6 states: "All rights and remedies of the Holder existing hereunder are cumulative to, and not exclusive of, any rights or remedies otherwise available."

189. Section 9 states that "[t]he Company waives presentment for payment, demand, notice of nonpayment, notice of protest and protest of this Note, and all notices in connection with the delivery, acceptance, or dishonor of this Note."

190. Section 12 states:

> The Company acknowledges that a breach by it of its obligations hereunder will cause irreparable harm to the Holder, by vitiating the intent and purpose of the transaction contemplated hereby. Accordingly, except as expressly set forth herein or in the Transaction Documents the Company acknowledges that the remedy at law for a breach of its obligations under this Note will be inadequate and agrees, in the event of a breach or threatened breach by the Company of the provisions of this Note, that the holder shall be entitled, in addition to all other available remedies at law or in equity, and in addition to the penalties assessable herein, to an injunction or injunctions restraining, preventing or curing any breach of this Note and to enforce specifically the terms and provisions thereof, without the necessity of showing economic loss and without any bond or other security being required. If default is made in payment of this Note, the Company shall pay the Holders costs of collection, including reasonable attorney's fees.



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

191. Section 14(j) states:

> If this Note is placed in the hands of an attorney for collection or enforcement or is collected or enforced through any legal proceeding or the Holder otherwise takes action to collect amounts due under this Note or to enforce the provisions of this Note in accordance with the terms of this Note, then the Company shall pay the costs incurred by the Holder for such collection, enforcement or action, including, but not limited to, attorneys' fees and disbursements, provided Holder finally prevails on such proceedings.

192. The "secured promissory note," which purports to be signed by iCap Vault Management, LLC, incorporates a purported "pledge and security agreement," with the purported entity Vault Holding, LLC, as "Pledgor."

193. The purported "pledge and security agreement" defines the "Pledged Interests" as "Pledgor is or shall be the sole member or shareholder of certain subsidiaries … which shall hold real estate investment properties, which will be acquired with the proceeds of the Notes and the proceeds from which will be used to pay amounts due to Pledgees pursuant to the Notes."

194. Section 1 of the purported "pledge and security agreement" states that,

> To secure the prompt payment and full and faithful performance of the Obligations of Pledgor to Pledgees pursuant to the Notes", iCap granted Plaintiffs a security interest in "(i) the Pledged Interests… (ii) any distribution, whether of cash or in kind, in connection with relating to, or in respect of the applicable Pledged Interests… (iii) any and all substitutions, renewals, improvements and replacements of Pledged Interests… and (iv) all proceeds arising from any of the foregoing.

195. Section 4 purports to represent and warrant to Plaintiffs that the pledged interests "do, or shall, constitute all of Pledgor's ownership in the Company."

196. Section 4 purports to represent and warrant to Plaintiffs that "the Pledgor is a limited liability company duly organized, validly existing, and in good standing under the laws of the State of Delaware…" As noted herein, there is no record of an entity ever existing in Delaware or Washington called "iCap Holding, LLC."



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

197. Section 4 also purports to represent and warrant that "Pledgor is the sole owner of the Pledge Interests … and has granted to [Plaintiffs] a valid and perfected first priority security interest in the Pledged Interests, free of liens, encumbrances, transfer restrictions and adverse claims."

198. Section 5 further purports to covenant that "Pledgor will pay and discharge when due all of its material obligations which if unpaid when due might by law give rise to a lien on the Pledged Interests…"

199. Section 6 purports to indemnify Plaintiffs:

> [F]rom any and all damages, loses, liabilities, taxes and expenses (including without limitation, attorney's fees and costs) resulting directly or indirectly from (a) any inaccuracy, misrepresentation, breach of warranty, or non-fulfillment of any of the representations and warranties … or any actions, omissions or statements of fact inconsistent with in any material respect any such representation or warrant, [and] (b) any failure by [iCap] to perform or comply with any agreement, covenant or obligation" [of the parties' agreements].

200. Section 8 states:

> The Pledgor agrees that, following an Event of Default, the Pledgor will pay to the Pledgees upon demand the amount of any out-of-pocket expenses, including the fees and disbursements of counsel, that Pledgees incurs in connection with enforcement of this Agreement, including expenses incurred to preserve the value of the Pledged Interests, the sale or other disposition of any of the Pledged Interests, the exercise by Pledgees of any of its rights, or any action to enforce its rights under this Agreement.

201. Section 10 incorporates Section 12 of the "secured promissory note."

202. The "secured promissory note" incorporates a purported "guaranty agreement", which purports to be signed by Defendant Chris Christensen.

203. Section 1 states that "Guarantor hereby unconditionally, absolutely and irrevocably guarantees the full and timely performance of all of the obligations of [iCap Pacific Income Fund 4, LLC] under the Notes, including the due and punctual payment of the principal and interest of the Note and all money due or that may become due…"



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

204. Section 4 states that "Guarantor agrees that its obligation to make payment under the terms of this Guaranty shall not be impaired, modified, changes, released or limited in any manner by any impairment, modification change, release, defense or limitation of the liability of Borrower…"

205. Section 6 purports to represent and warrant that "Guarantor is a limited liability company duly organized, validly existing, and in good standing under the laws of the State of Delaware…" As noted herein, there is no record of an entity ever existing in Delaware or Washington called "iCap Holding, LLC."

206. Section 7 purports to provide that "this Guaranty shall be binding upon and enforceable against Guarantor and its successors and assigns."

207. Section 10 incorporates Section 12 of the "secured promissory note."

***Senza Kenmore, LLC***:

208. iCap touted that it was developing five senior-care homes and that an established and reputable senior care operator had signed a 10-year term lease agreement to commence upon completion.

209. Upon information and belief, Senza Kenmore, LLC, and iCap Pacific NW Management, LLC, have breached their obligations to Plaintiff Zhang.

210. Section 5 of Senza Kenmore, LLC's "operating agreement" purports to require distributions of available cash on a quarterly basis, with priority given to Class A Members such as Plaintiff Shiyu Zhang. Section 5 further purports to require tax distributions to members yearly. Plaintiff Zhang has never received distributions.

211. Section 6 states that the manager (iCap Pacific NW Management, LLC) owes members the duties stated in Washington's limited liability company statute. Upon information and belief, those duties have been neglected.



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

212. Section 6 further purports to require the manager to conduct its affairs lawfully and in a manner that does not constitute gross negligence, intentional misconduct, or knowing violation. Discovery may reveal that this clause has been breached.

213. Section 6 purports to require the manager to commit the necessary to time to "manage and supervise the affairs of the Company in accordance" with the operating agreement. Discovery may reveal that this clause has been breached.

214. Section 8 purports to grant members the right to inspect the records of the company. Plaintiff Zhang's request for inspection of records has been ignored.

215. Section 8 further purports to require a majority of members to approach making "major decisions," including without limitation, the sale or transfer of substantially all assets, engaging in any business activity other than that contemplated by the parties, engaging in a merger, acquisition, conversion, or reorganization into or with another entity, causing the company to seek protection from creditors, redemption or liquidation of any member's units.

216. Section 9 purports to require the companies accounting affairs to be kept under a "permissible method of accounting" and supervised by the manager. Discovery may reveal that this clause has been breached.

217. Section 12 purports to provide that "a Member shall be in default" in the event the member violates Sections 12.1.1-12.1.4. Upon the occurrence of such a violation, the company can be dissolved, expenses offset against the defaulting member's interest, the defaulting member can be expelled, and any other remedy at law or equity can be pursued against the defaulting member, which Plaintiff Zhang reserves the right to pursue here.

218. Section 13 provides, among other things:

> The Members acknowledge that the Company and the Members would be damaged irreparably and would have no adequate remedy at law if any provision of this Agreement were not performed in accordance with its specific terms. The Company and each Member is entitled to injunctive relief to prevent or remedy breaches of this Agreement and to enforce specifically the terms and provisions



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

hereof, without having to prove the inadequacy of any remedy that may be available at law or being required to post bond or other security.

219. With this action, Plaintiff Zhang reserves the right to pursue all available remedies under the operating agreement and under Washington law.

***

220. Based on the facts and circumstances alleged herein, iCap Vault 1, LLC, iCap Pacific Income Fund 4, LLC, Senza Kenmore, LLC, iCap Pacific NW Management, LLC, and any owners, coconspirators, and alter egos, should be deemed liable for breach of contract. To the extent Plaintiffs pursue this alternative theory of liability at trial, they are entitled to all remedies available under such transaction documents and Washington law.

221. Plaintiffs reserve the right to add additional defendants to Plaintiffs' Eighth Cause of Action for Breach of Contract under the facts and circumstances of this case.

## NINTH CAUSE OF ACTION

## MONEY HAD AND RECEIVED / CONVERSION

222. Plaintiffs reallege and incorporate all allegations of this Complaint.

223. Plaintiff invested millions of dollars in cash with Defendants.

224. Defendants received, benefited from, and have wrongfully retained Plaintiffs' funds despite Plaintiffs' demands.

225. Plaintiffs are entitled to restoration of the amount of money conferred to Defendants, and all other relief afforded by Washington law, in an amount to be proven at trial.

## TENTH CAUSE OF ACTION

## UNJUST ENRICHMENT / RESTITUTION

226. Plaintiffs reallege and incorporate all allegations of this Complaint.

227. Plaintiff invested millions of dollars in cash with Defendants.

228. Defendants received, benefited from, and have wrongfully retained Plaintiffs' funds despite Plaintiffs' demands.



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

229. Plaintiffs are entitled to restoration of the value of the benefits conferred on and or restitution as applicable remedies, and all other relief afforded by Washington law, including but not limited to equitable subordination, in an amount to be proven at trial.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs respectfully requests that the Court award the following relief:

1. For orders conforming Plaintiffs' claims to the evidence developed in discovery;

2. For an award of damages and equitable relief against Defendants for Plaintiffs' common law claims in an amount and of a nature to be determined at trial;

3. For prejudgment interest on any portion of the damages award that is for a liquidated amount;

4. For an award of rescission, with all damages owed jointly and severally by all Defendants resulting from Defendants' violations of RCW 21.20;

5. For temporary, preliminary, and permanent injunctive relief enjoining and restraining the Defendants and their representatives, officers, agents, affiliates, owners, or successors, from continuing to engage in the unlawful conduct complained of herein, including transferring any funds or assets away from or between Defendants, or otherwise hindering or delaying the recovery of Plaintiffs' claim;

6. For alter ego liability / piercing the corporate veil as applicable;

7. For an award of attorneys' fees and costs incurred in this action,

8. For restitution, rescission, and legal or equitable subordination in favor of Plaintiffs' claims;

9. Punitive damages;

10. Subordination of competing priority interests; and

11. For such other and further relief as the Court deems just, equitable, or warranted by law.



CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

DATED this 14th day of July, 2023.

CORR CRONIN LLP

*s/ John T. Bender*

John T. Bender, WSBA No. 49658
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Ph: (206) 625-8600 | Fax: (206) 625-0900
jbender@corrcronin.com

CORR CRONIN LLP
Blake Marks-Dias, WSBA No. 28169
Jack M. Lovejoy, WSBA No. 36962
Emily Parsons, WSBA No. 57061
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
(Ph: (206) 625-8600 | Fax: (206) 625-0900
bmarksdias@corrcronin.com
jlovejoy@corrcronin.com
eparsons@corrcronin.com

*Attorneys for Plaintiffs*